Argued and submitted September 29, affirmed December 15, 1993

## STATE OF OREGON,
*Appellant,*

*v.*

## JOHN MICHAEL HALLINAN,
*Respondent.*

(91-1197; CA A76261)

865 P2d 449

Youlee Yim You, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Irene B. Taylor, Deputy Public Defender, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Durham, Judges.

DURHAM, J.

## DURHAM, J.

The state appeals from the sentence imposed on defendant following his plea of guilty to escape in the second degree, ORS 162.155, assigning error to the court's imposition of a downward departure.[1] Our review is governed by ORS 138.222. We affirm.

The court placed defendant in grid block 6-A, with a presumptive sentence range of 25-30 months imprisonment, but imposed a sentence of 15 months. The state argues that the court made no findings to support the downward departure.

■ Defendant argues that the sentence is not reviewable because it was imposed pursuant to a plea agreement accepted by the court. We agree. ORS 138.222(2)[2] provides, in part:

"On appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989, the appellate court shall not review:

"* * * * *

"(d) Any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record."

Using a printed form, defendant filed a "petition to enter plea of guilty" that said, in material part:

"The defendant represents to the Court:

"* * * * *

"7. I know that if I plead 'GUILTY/_____' to the charge(s) * * *, the maximum possible sentence is [5] years imprisonment and/or a fine of [$100,000]. I also know that the Court can impose a minimum sentence of up to one-half of the maximum term of imprisonment above. *The District Attorney has agreed to recommend*

---

[1] ORS 137.671 provides, in part:

"(1) The court may impose a sentence outside the presumptive sentence or sentence range * * * if it finds * * * there are substantial and compelling reasons justifying a deviation from the presumptive sentence.

"(2) Whenever the court imposes a sentence outside the presumptive sentence it shall set forth the reasons for its decision * * *."

[2] ORS 138.222(2)(d) was amended by Oregon Laws 1993, chapter 698, section 1. Its effect is not at issue here.

"[Sentencing Guideline Gridblock 6-A Recommend 30 months consecutive Defendant disputes Criminal History is 'A']

"*and otherwise will take no position* other than providing Police Reports and other factual information as requested by the Court. *I declare that no government agents have made any promises* that I will receive a lighter sentence, probation, or any other form of leniency if I plead '**Guilty/_____**' *other than by the District Attorney as set forth above*[.]

"* * * * *

"ACCEPTED BY __[Judge's Signature]__ " (Handwritten material in brackets; boldface in original; emphasis supplied.)

The state never claimed that the petition was not accurate. The court accepted and relied on the plea petition in sentencing defendant.

■　　Nevertheless, the state argues on appeal that there was no plea agreement, because the statement in the petition that the district attorney "agreed to recommend" a particular sentence appears in "boilerplate language" and because the state sacrificed nothing to obtain defendant's plea. The state did not agree to dismiss any charges, and it recommended the maximum presumptive sentence. It contends on appeal that it had no basis for seeking an upward departure. However, the mandate of ORS 138.222(2)(d) does not depend on the nature of the parties' negotiations or the wisdom of their contract. The state's contention that the petitioner's words are mere "boilerplate" disregards the fact that the petition states the terms of an agreement that the court accepted and on which defendant relied in pleading guilty. Nothing contradicts the representations in paragraph 7 that the District Attorney agreed to make the specified sentencing recommendations and to take no other position regarding sentencing, in exchange for the guilty plea. We reject the state's implicit contention that we may disregard a plea agreement expressed in the printed words of a form.[3]

---

[3] We will look beyond the printed form if the circumstances warrant it. If one party disputes the existence of a plea agreement, we will analyze the record to determine whether a plea agreement exists. *See State v. Adams*, 315 Or 359, 361, 847 P2d 397 (1993). Nothing in the record contradicts the evidence that defendant made a plea agreement and that the court accepted it.

■ The state also fails to acknowledge the full scope of its concessions. In addition to the agreement to recommend a 30-month consecutive sentence, the parties agreed that the correct crime seriousness score is "6" and that the state would take no position regarding the sentence beyond the terms stated in the plea petition. That condition barred the state from advocating an upward departure sentence, whether or not the state had grounds to do so. It also barred the state from opposing any request by defendant for a downward departure.

In *State v. Kilborn*, 120 Or App 462, 464, 852 P2d 935 (1993), we determined that ORS 138.222(2)(d) barred appellate review of a sentence imposed as part of an agreement by the state to dismiss a charge and to make no recommendation about incarceration. We said:

> "Defendant's 'Petition to Enter Plea of Guilty' recites that he will plead guilty and 'the District Attorney shall make no recommendations to the Courts concerning my sentence except as follows — dismissed charges in Case 91-1490.' As we noted in *State v. Johnston*, [120 Or App 165, 168, 851 P2d 1156, *rev den* 317 Or 272 (1993)] part of the exchange for the defendant's guilty plea included the recommendation that the state would make as to incarceration. The same is true here as to the state's silence as to the term of incarceration. That silence was part of the bargain."

As in *Kilborn*, the state's agreement to make no sentencing recommendation, other than that specified in the petition, was part of the bargain. By agreeing to recommend only the presumptive sentence, the state gave up its right to seek an upward departure sentence or to argue against a downward departure. It is inconsequential that the state did not also agree to drop charges or make other concessions.

Affirmed.