Argued and submitted September 12, decision of the Court of Appeals reversed and case remanded to the Court of Appeals for further proceedings December 16, 1994

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# PHILIP LEE KEPHART,
*Petitioner on Review.*

(CC 10-91-02674, 10-91-03155;
CA A72778 (control), A72779; SC S40786)

887 P2d 774

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause and filed the petitions and brief for petitioner. With him on the petitions and brief was Sally L. Avera, Public Defender, Salem.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

## GILLETTE, J.

In this criminal case, we are faced with the limited question of the appellate reviewability of a criminal sentence. Defendant argued to the Court of Appeals that the trial judge improperly applied the state sentencing guidelines to his offenses. Defendant then argued that, due to this allegedly improper application of the sentencing guidelines, the Court of Appeals had authority to review the sentence under ORS 138.222(4)[1], notwithstanding any limitations on that authority provided by ORS 138.222(2) (1989).[2] The state argued to the Court of Appeals that defendant's sentence resulted from an "agreement" approved by the trial court and that the Court of Appeals therefore had no authority to review defendant's sentence under ORS 138.222(2)(d) (1989).[3] The state moved for summary affirmance on that basis. The Court of Appeals granted the state's motion and affirmed the trial court judgment for lack of reviewability.

On November 4, 1993, after defendant had lost at the Court of Appeals, but while his petition for review was still pending before this court, the amended version of the statute, ORS 138.222(2)(d) (1993),[4] went into effect. Defendant

---

[1] ORS 138.222(4) states,

"In any appeal, the appellate court may review a claim that:

"(a) The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence; or

"(b) The sentencing court erred in ranking the crime seriousness classification of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes."

[2] This court has stated that, before an appellate court may review a sentence under ORS 138.222(4), it must determine whether review is permitted under ORS 138.222(2). *State v. Adams*, 315 Or 359, 365, 847 P2d 397 (1993).

[3] ORS 138.222(2) (1989) stated in part:

"(2) On appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989, the appellate court shall not review:

"* * * * *

"(d) Any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record."

[4] ORS 138.222(2) (1993) provides, in part:

"(2) On appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989, the appellate court shall not review:

"* * * * *

"(d) Any sentence resulting from a *stipulated sentencing* agreement

argues to this court that, even if review were properly denied by the Court of Appeals under ORS 138.222(2)(d) (1989), because his sentence "resulted" from an "agreement" between defendant and the district attorney, this court can review the sentence under ORS 138.222(2)(d) (1993), because the "agreement" was not a "stipulated sentencing agreement."

One more sabot may be thrown into the works: After the imposition of defendant's sentence, but before the Court of Appeals summarily affirmed that sentence, this court upheld the specific application of the sentencing guidelines that defendant argues was illegal. *See State v. Miller*, 317 Or 297, 300-02, 855 P2d 1093 (1993) (upholding the practice of upwardly adjusting a defendant's criminal history score for each separate criminal episode, even when the sentences for all of the episodes are imposed in a single sentencing proceeding). The legal dispute at this level, is over whether the Court of Appeals properly denied review of the sentence, or whether it erred and should have reached the merits of defendant's now substantially weakened case.

We granted defendant's petition for review to determine whether the 1989 or the 1993 version of ORS 138.222-(2)(d) applies to defendant's appeal and, whichever version of that statute is applicable, whether the Court of Appeals is required to review defendant's claim of error. We conclude that the 1993 version of ORS 138.222(2)(d) now applies to defendant. We also conclude that, under that version of the statute, defendant's sentence is not the result of a "stipulated sentencing agreement" and is therefore reviewable under 138.222(2)(d) (1993).

Defendant pleaded guilty to 19 counts of assault and criminal negligence in exchange for a detailed plea and sentencing agreement. The trial court agreed to accept and follow the agreement. The court then imposed a sentence totalling 600 months (50 years) of consecutive imprisonment.

The agreement between the defendant and the state is central to any claim of nonreviewability under either the

---

between the state and the defendant which the sentencing court approves on the record."

(Emphasis added; emphasized material inserted by amendment in 1993.)

former or the amended version of ORS 138.222(2)(d). Because the extensive agreement between defendant and the state is central to our inquiry, we reprint it here in its entirety:

"The State of Oregon makes the following plea offer in the above named cases.

"1) The defendant can stipulate to facts, which the parties agree will be sufficient to constitute sufficient grounds for the court to find the defendant guilty of all the counts of both indictments.

"2) The parties will seek and obtain approval by the Court to limit the defendant's exposure at sentencing to a sentence of no more than 50 years to the Corrections Division of the State of Oregon, and the court must agree to be bound by this agreement.

"3) The State agrees not to ask for dangerous offender treatment.

"4) The State agrees not to request a minimum mandatory sentence in connection with [one of the counts].

"5) The State agrees not to ask for the death penalty if the defendant is convicted of aggravated murder concerning injuries to [one of the victims].[5]

"6) The State agrees not to file other charges concerning criminal behavior concerning [the victims] *with the following exception.* This agreement does not prohibit the State of Oregon from charging the defendant with Aggravated Murder, Murder, or any other degree of criminal homicide should [one of the victims] die from injuries suffered * * * from conduct of the defendant. This agreement *does not* limit the Court's right to sentence the defendant to any term authorized by statute in the event that charges are filed against the defendant for the death of [one of the victims]. This agreement does not limit the right to the defendant to raise any appropriate legal challenges to the filing of any degree of criminal homicide for the death of [the victim].

"7) While the parties agree that the defendant will be convicted of all of the counts of both indictments, the State agrees that in Case No. 10-91-02674, Count 2 merges with

---

[5] One of defendant's victims remained in a coma with severe brain damage at the time of sentencing. By this provision, the state reserved the right to seek a separate conviction and sentence for aggravated murder if that victim should die from the injuries inflicted by defendant.

Count 1, that Count 4 merges with Count 3, that Count 6 merges with Count 5, that Count 10 merges with Count 9, that Count 12 merges with Count 11, [and] that Count 14 merges with Count 13.

"8)   The defendant will be sentenced in Case no. 10-91-02674 on counts 1, 3, 5, 7, 8, 9, 11, and 13. The defendant will be sentenced on all counts of Case no. 10-91-03155.

"9)   The State agrees not to ask the Court to depart from the Sentencing Guidelines presumptive sentence on all cases that are governed by the Sentencing Guidelines, with the exception that with respect to Count 1 of Indictment 10-91-03155, the State is free to ask for a departure sentence under the Sentencing Guidelines. On Count 1 of 10-91-03155 sentencing is open.

"10)   The sentencing on Count 1 of Case No. 10-91-024674 [a pre-guidelines offense] is not controlled by the Sentencing Guidelines. Subject to the conditions set forth in paragraphs 3 and 4 above, sentencing is open subject to the 50 year maximum recommendation which applies to all cases.

"11)   The parties agree that the Court may bind itself not to give the defendant more than a total of 50 years, however, the State acknowledges the right to [sic] the defendant to argue that the defendant should receive a lesser sentence, and this agreement expressly reserves the right to the defendant to argue that a lesser sentence is appropriate.

"12)   The parties make no agreement concerning the appropriate gridblock [sic] under Sentencing Guidelines [sic] for any count of either indictment. This issue is open, and subject to argument and the ruling of the Court concerning the appropriate gridblock [sic] for each case at the time of sentencing.

"13)   Subject to the limitations set forth in this agreement, sentencing is otherwise open.

"14)   The defendant agrees to waive all appeal rights in connection with his convictions on both indictments, *with the exception* that the defendant and the State maintain the right to appeal any ruling made by the court concerning the appropriate sentence of the defendant."

(Emphasis in original.)

The trial judge accepted the agreement submitted by the parties and agreed to be bound by its terms. When imposing the sentences, however, the judge followed the then-controversial practice in Lane County of adjusting defendant's criminal history score upward between the sentencings for each separate criminal episode.[6] Thus, the first sentence imposed under the guidelines took into account *that* crime's seriousness and the defendant's criminal history at the time of *that* crime. The second guidelines sentence took into account the seriousness of the second guidelines offense and defendant's criminal history at the time of *that* sentencing — including the crime for which defendant had just been sentenced. Defendant's third sentence took into account the first two crimes, and so forth. The total sentence was exactly 50 years of consecutive imprisonment — the limit under the agreement.[7] Defendant appealed the trial court judgment to the Court of Appeals, where review was denied.

Our analysis of the present case requires three steps. We first address the question of which version of the statute is applicable to this case. Next, we interpret that statute. Finally, we apply the appropriate version of the statute.

■■ Before we can reach the issue of reviewability, we must decide which version of ORS 138.222(2)(d) applies to this case. The applicability of an amended statute to pending claims before an appellate court is a matter generally within the control of the legislature. In interpreting a statute, this court's task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606,

---

[6] Under the sentencing guidelines, the presumptive sentence for a given defendant and crime is determined from a "grid." The presumptive sentence depends on the seriousness of the crime committed and the defendant's prior criminal history. Together, the "crime seriousness score" and the "criminal history score" constitute the defendant's presumed "grid block," from which the presumptive sentence is derived. The operation of the sentencing guidelines is discussed at length in *State v. Davis*, 315 Or 484, 486-88, 847 P2d 834 (1993).

[7] To reach a total sentence of 50 years, the judge imposed presumptive sentences on all but two counts. For those offenses the judge imposed one downward departure sentence and one upward departure sentence. The upward departure was allowed under paragraph nine of the agreement. Because of the presence of the upward departure sentence, we do not decide the issue of reviewability on the basis of the court's correct imposition of presumptive sentences under the guidelines. ORS 138.222(2)(a); *compare State v. Martin*, 320 Or 448, 887 P2d 782 (1994) (affirming sentence in similar case on basis of ORS 138.222(2)(a)). By their terms, ORS 138.222(2)(b) and (c) do not apply.

610, 859 P2d 1143 (1993). The first level of analysis of legislative intent is the text and context of the statute. *Id.* 317 Or at 611. The text is the best evidence of legislative intent, but we must read it in the context of the surrounding statutes.

■    In the present case it is clear, from the text and context of the statute, that the legislature intended the amended statute to apply to those cases "[o]n appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989[.]" ORS 138.222(2). That wording appeared in the former statute not once, but twice. *See* ORS 138.222(1).[8] By the statute's own terms, ORS 138.222(2)(d) (1989) applied to all felony cases relating to crimes committed "on or after November 1, 1989." If the legislature intended that a different date apply to the statute after it was amended, the legislature needed either to change the statutory date of application or to insert a new date into ORS 138.222(2)(d) (1993). It did neither. That choice satisfies us that the legislature intended that the new wording of the statute apply to all cases involving crimes subject to the former wording. The statute means what it says. We need go no further than an examination of text and context to answer this issue.

The amendment to ORS 138.222(2)(d) became effective on November 4, 1993. Therefore, by its own terms, ORS 138.222(2) (1993) applied to all timely appeals before an appellate court on that date — *provided* that the appeals related to crimes committed on or after November 1, 1989. Because defendant's appeal was pending before this court on November 4, 1993, and because his appeal pertains to crimes committed after November 1, 1989, ORS 138.222(2) (1993) applies.

■    Before we can apply the amended statute, it is necessary to discern its substantive meaning. Again, our first step in statutory interpretation is to look at the text and context. *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611.

---

[8] ORS 138.222(1) provides:

"(1) Notwithstanding the provisions of ORS 138.040 and 138.050, a sentence imposed for a judgment of conviction entered for a felony committed on or after November 1, 1989, may be reviewed only as provided by this section."

The reviewability of defendant's sentence turns on the meaning of the term "stipulated sentencing agreement." Although the meaning of that term is not self-evident, the text and context provide some insight into its meaning.

First, it is clear from the text alone that the words inserted by the 1993 amendment, "stipulated sentencing," modify the type of "agreement" concerning which review is precluded. Furthermore, it is clear that the phrase, "stipulated sentencing agreement," defines a narrower class of agreements than one that would include all possible agreements. We can discern from the text that the agreement must at least define sentencing parameters, if not the actual sentence to be imposed.

■ ■ The statutory context also provides insight into the meaning of "stipulated sentencing agreement." ORS 135.407[9] describes several ways in which the state and a

---

[9] ORS 135.407 states:

"In cases arising from felonies committed on or after November 1, 1989:

"(1) Whenever a plea agreement is presented to the sentencing judge, the defendant's criminal history classification * * * shall be accurately represented to the trial judge in the plea agreement. If a controversy exists as to whether a prior conviction or juvenile adjudication should be included in the defendant's criminal history, or as to its classification under rules of the State Sentencing Guidelines Board, the district attorney and the defendant may stipulate to the inclusion, exclusion or classification of the conviction or adjudication as part of the plea agreement subject to approval of the court.

"(2) The district attorney and the defendant may stipulate to the grid block classification within the sentencing guidelines grid established by the rules of the State Sentencing Guidelines Board that will provide the presumptive sentence range for the offender. The sentencing judge may accept the stipulated classification and impose the presumptive sentence provided in the rules of the State Sentencing Guidelines Board for that grid block.

"(3) If the district attorney and the defendant stipulate to a grid block classification within the sentencing guidelines grid, and the sentencing judge accepts the stipulated classification but imposes a sentence other than the presumptive sentence provided by rules of the State Sentencing Guidelines Board, the sentence is a departure sentence and is subject to the rules of the State Sentencing Guidelines Board related to departures.

. "(4) The district attorney and defendant may stipulate to a specific sentence within the presumptive range provided by rules of the State Sentencing Guidelines Board for the stipulated offender classification. If the sentencing judge accepts the plea agreement, the judge shall impose the stipulated sentence.

"(5) The district attorney and the defendant may stipulate to a sentence outside the presumptive sentence range for a stipulated grid block classification. The sentencing judge may accept an agreement for an optional probationary sentence or a departure sentence as provided in rules of the State Sentencing Guidelines Board."

defendant may "stipulate" to a sentence. Parties may stipulate to a grid block classification within the sentencing guidelines for the purpose of obtaining the presumptive sentence under that grid block. ORS 135.407(2). In that case, if the judge accepts the stipulated classification, but imposes a sentence outside of the presumptive range for the stipulated grid block, the sentence is treated as a departure and must be justified as such. ORS 135.407(3). Alternatively, the parties may stipulate to a specific sentence within the presumptive range for the stipulated offender classification. ORS 135.407(4). In that case, if the judge accepts the plea agreement, the judge must impose the stipulated sentence. *Id.* Finally, the parties may also "stipulate to a sentence outside the presumptive sentence range for a stipulated grid block classification." ORS 135.407(5).

■      The context of the statute, including the examples of stipulated sentencing agreements in ORS 135.407, confirms that the legislature intended to narrow the class of agreements that would preclude judicial review. ORS 135.407 indicates that stipulations as to grid block, length of sentence within a grid block, and departure sentences outside of a grid block should be included within the new class of "stipulated sentencing agreements." Those three examples, however, may merely be illustrative of the class, rather than the entire class. We conclude that an examination of text and context alone does not make the legislative intent clear. If the intent of the legislature is not clear from the text and context of the statute, this court proceeds to the legislative history of the statute for guidance. *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611-12.

A brief history of the interpretation of ORS 138.222-(2)(d) (1989) is necessary to our analysis of the current statute's legislative history. ORS 138.222(2)(d) (1989) was part of a larger enactment, 1989 Or Laws Chapter 790, which codified the sentencing guidelines. In *State v. Adams,* 315 Or 359, 367, 847 P2d 397 (1993), this court determined that the legislature, in enacting ORS 138.222 (1989), "did not intend that a sentence resulting from an agreement between a defendant and the state be reviewable on appeal." This court

stated, "* * * ORS 138.222 precludes appellate review of defendant's sentence resulting from a plea agreement between himself and the state." *Id.* That was our last — indeed, our only — interpretation of the former statute.

The Court of Appeals, beginning with *State v. Johnston*, 120 Or App 165, 851 P2d 1156 (1993), interpreted this court's opinion in *Adams* as preventing review of: a departure sentence following an agreement as to the appropriate grid block and maximum sentence (*State v. Johnston, supra*, 120 Or App at 169-70); a sentence following a guilty plea, when the state agreed to stand silent at sentencing (*State v. Kilborn*, 120 Or App 462, 852 P2d 935 (1993)); and a sentence following an agreement in which the state agreed to drop other charges if the defendant agreed to admit liability for purposes of restitution (*State v. Tanner*, 121 Or App 104, 106, 854 P2d 941 (1993)).

The amendment that led to the present version of ORS 138.222(2)(d) was introduced on behalf of the Oregon District Attorney's Association in the waning days of the 1993 legislative session. The only available legislative history comes from one work session held by the Senate Judiciary Committee.[10] At that work session, only two proponents testified. No questions were posed to either proponent regarding the intent of the language in the amendment. Ross Shepard, Legislative Counsel for the Oregon Criminal Defense Attorney's Association, testified first. He stated, in part:

> "[T]his amendment, we think, would allow either the defense or the prosecution to appeal a sentence that either side believes was inaprop... well,... was illegal unless — and this is an important unless — unless there was a stipulated sentence.
>
> "The Oregon Supreme Court, in a recent case called State against Adams,[11] ruled that there is no, and there should be no, appeal from a sentence that is stipulated to by the parties

---

[10] Tape recording, Senate Judiciary Committee, July 27, 1993, Tape 232, Side B (testimony and discussion of HB 2256).

[11] As already noted, this court in *State v. Adams, supra*, denied review to a defendant who first stipulated to a particular grid block and then attempted, unsuccessfully, to challenge that grid block.

and then agreed to by the court, and both the defense and the prosecution agree with that notion."

In further support of the amendment, Shepard submitted a letter to the Senate Judiciary Committee which stated, in part:

"These amendments [*sic*] deal with a problem that has just recently arisen in a series of appellate cases that hold that if a conviction is the result of any sort of agreement between the prosecution and the defense, that the resulting sentence is not subject to appellate review. In *State v. Kilborn*, 120 Or App 462 (May 19, 1993), Oregon Court of Appeals Judge Paul DeMuniz held that in a case where the prosecution agreed to make no recommendation at the time of sentencing, that a defendant was precluded from appealing an illegal sentence. Judge DeMuniz, inviting a legislative solution, went on to say 'We do not quarrel with the result that defendant articulates as the consequences of limited appellate review. However, whether that result should change, must be determined by the legislature.'

"The proposed amendments would save a vast amount of money from the Indigent Defense Fund. * * * the percent of sentenced felons convicted by trial [is] 9 percent which means that 91 percent of the felony convictions [are] by plea or stipulated facts, and I venture to say that virtually all of those cases involved some sort of agreement between the prosecution and the defense. Should the reasoning in the *Kilborn* case be allowed to stand, defense counsel would be rendering ineffective assistance to advise a plea bargain knowing that an illegal sentence imposed by the trial court could not be reached by appeal. * * *"

Fred Avera, representing the Oregon District Attorney's Association, also testified before the committee. He supported Shepard's position, testifying that the amendment would not affect this court's holding in *State v. Adams*, as that *was* a case in which the sentence itself was stipulated. He reiterated Shepard's remarks regarding *State v. Kilborn* and said that the amendment was intended to reverse the broad interpretation of the statute in that case.

From the legislative history, we have a clearer understanding of legislative intent. We know that the amendment was drafted to preserve the result in *Adams*, while reversing the result in *Kilborn*, and the "series of appellate cases" of

which *Kilborn* was a part. We also know that the proponents intended the amendment to permit appellate review of "illegal" sentences, unless the defendant agreed to that sentence ahead of time as part of a "stipulated sentencing agreement."

To better understand the intention of the legislature, a closer analysis of the result in *Adams* and the series of Court of Appeals decisions corrected by the amendment is required. In *State v. Adams, supra*, 315 Or at 359, this court denied review to a defendant who had stipulated *for sentencing purposes* to a grid block that normally would not have been an appropriate application of the state sentencing guidelines. The defendant then challenged the sentence under ORS 138.222(4) as a misapplication of the guidelines. This court held that a defendant who specifically agreed to a grid block unauthorized by the state sentencing guidelines could not later challenge his sentence on the grounds that the guidelines were applied incorrectly. We based our conclusion, that defendant's agreement was permissible and binding, on ORS 135.407 and the administrative rules that implement it. *State v. Adams, supra*, 315 Or at 363-64. *See* OAR 253-07-003(1) (subject to the provisions of OAR 253-07-002 and the approval of the sentencing judge, the district attorney and defense may stipulate to the grid block classification within the sentencing guidelines grid which will provide the presumptive sentence for the offender); OAR 253-07-004 (the district attorney and the defense may stipulate to a specific sentence within the presumptive sentence range for the stipulated grid block classification). The agreement in *Adams* did not extend beyond the class of stipulations listed in ORS 135.407.

The "series of appellate cases" decided after *Adams* strayed from the statutory guidelines set out in ORS 135.407. In *State v. Johnston, supra*, 120 Or App at 168-69, the Court of Appeals held that a stipulation as to defendant's grid block prevented review of defendant's sentence despite the fact that the sentencing judge upwardly departed from that grid block. The court reasoned that, because defendant had agreed to an upper limit on his sentence and the sentence was at that limit, the sentence "resulted from" the agreement. The court presumed that the agreement was permissible under ORS 135.407 and quoted a summary of that statute prepared by

the Oregon Criminal Justice Council in support of the court's assumption:

> "The parties may stipulate to an appropriate grid-block classification for an offender *without also agreeing to the actual sentence to be imposed*. If this situation occurs, the sentencing judge is free to impose the presumptive sentence or to depart from the guidelines. If a departure sentence is imposed, it must be supported by substantial and compelling reasons as required by OAR 253-08-001. *It is not, however, appealable as a departure sentence pursuant to [ORS 138.222(3)] because such appeal is precluded as a plea agreement sentence. See [ORS 138.222(2)(d)].*"

*State v. Johnston, supra,* 120 Or App at 169 (quoting *Oregon Sentencing Guidelines Implementation Manual,* 71 (1989)) (emphasis in original). From this, the Court of Appeals held that review of the departure for "substantial and compelling reasons," the legal standard set out by ORS 138.222(3) (1989), was not allowed by ORS 138.222(2)(d) (1989). Whatever the court's reasons for reliance on an unofficial summary of a statute over that statute's text, the legislative history of ORS 138.222(2)(d) (1993) tells us that the 1993 amendment was drafted to prevent such a result. Shepard testified that the amendment would *provide* for appellate review of illegal sentences "unless there was a *stipulated sentence.*" (Emphasis added.) This suggests that the legislative intent of ORS 138.222(2)(d) (1993) was to permit review of sentences for illegality (ORS 138.222(3) and (4)) unless certain specific stipulations, like those in ORS 135.407, are made and accepted by the court.

In *State v. Kilborn, supra,* 120 Or App at 464, the defendant and prosecutor agreed that, in return for a guilty plea, the prosecutor would stand silent at sentencing. The Court of Appeals held that, under *Adams,* the sentence was the result of a plea agreement and was, therefore, not reviewable. The defendant in *Kilborn* urged the court "to construe ORS 138.222(2)(d) to preclude review of only an agreed upon sentence, because * * * otherwise, '*any* sentence would be unreviewable if the defendant pled guilty, despite the provision in ORS 138.222(4) * * *.' " *Id.* at 464-65 (emphasis in original). The Court of Appeals completely ignored ORS 135.407. Had the court adopted the defendant's view, it would have allowed review for lack of an "agreed upon

sentence." The legislative history of ORS 138.222(2)(d) (1993) tells us that the legislature intended to reverse the result in *Kilborn* and allow such review. The legislative history again points us toward the text of ORS 135.407.

In *State v. Tanner, supra,* 121 Or App at 106, the Court of Appeals focused on the fact that a plea agreement had been made and held that defendant's claim that the state sentencing guidelines had been applied incorrectly was not reviewable under ORS 138.222(2)(d) (1989). *Tanner* illustrates the problem identified by the defendant in *Kilborn* and by the proponents of ORS 138.222(2)(d) (1993): If the review of a sentence is denied *whenever* an agreement between the defendant and the state tangentially relates to sentencing, then the limitations in the state sentencing guidelines become unenforceable after *any* plea agreement. We know from the legislative history of ORS 138.222(2)(d) (1993) that the legislature did not intend to permit that outcome.

■■  We now turn to our interpretation of the amended statute. We have found nothing in the legislative history to indicate that the legislature intended, in enacting ORS 138.222(2)(d) (1993), to expand on the kinds of stipulated sentences specified in ORS 135.407. We therefore hold that the legislature intended ORS 138.222(2)(d) (1993) to allow review of sentences unless they were "stipulated sentences" as illustrated in ORS 135.407. This interpretation is consistent with the text, context, and legislative history of the amendment. The legislature has defined the kind of stipulations as to sentencing that it wishes to make immune to review. Although preclusion of review of other kinds of stipulations might be conceivable, or even desirable, any expansion of that defined class of "stipulated sentencing agreements" is a legislative function. Defendant's agreement with the state, although clearly a plea agreement, is not a stipulation as to sentencing of a kind described by ORS 135.407 and, because it is not, ORS 138.222(2)(d) (1993) does not preclude review.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.