Argued and submitted August 5, 1998; resubmitted En Banc February 3, affirmed
April 28, 1999

## STATE OF OREGON,
*Respondent,*

*v.*

## MAGDALENO SANCHEZ,
*Appellant.*

(96C21509; CA A98280)

981 P2d 361

Walter J. Ledesma, Deputy Public Defender, argued the cause for appellant. With him on the brief was Diane L. Alessi, Interim Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Wollheim, and Brewer, Judges, and Warren, Senior Judge.

LANDAU, J.

Edmonds, J., concurring.

## LANDAU, J.

Defendant appeals a judgment of conviction for possession of a weapon by an inmate. ORS 166.275. He challenges the validity of the conviction on the ground that the trial court accepted his no contest plea and sentenced him without requiring the court-appointed Spanish interpreter to place her credentials on the record. He also challenges the validity of the sentence, which imposes an obligation to pay a unitary assessment and attorney fees, on the ground that the trial court failed to make a finding as to defendant's ability to pay. We affirm.

Defendant requested a Spanish interpreter. The trial court appointed an interpreter and took her oath to provide a true and impartial translation of the proceedings. The court did not require the interpreter's credentials to be entered into the record. Through the interpreter, defendant entered a plea of no contest to the charge that, on or about August 22, 1996, while committed to a state penal institution, defendant possessed a weapon.

At the sentencing hearing, defendant again requested an interpreter, and the trial court again appointed one. At the sentencing hearing, however, the interpreter took no oath and again did not place her credentials on the record. The trial court imposed a unitary assessment of $94, plus $300 in attorney fees. Defendant entered no objection to the award of attorney fees.

On appeal, defendant contends that his conviction must be set aside because the trial court failed to comply with the requirements of ORS 45.275(7) in accepting his plea and in sentencing him. That statute provides:

> "Any person serving as an interpreter for the court in a civil or criminal proceeding shall state or submit the person's qualifications on the record unless waived or otherwise stipulated to by the parties or counsel for the parties. An interpreter for the court shall swear or affirm under oath to make a true and impartial translation of the proceedings in an understandable manner using the interpreter's best skills and judgment in accordance with the standards and ethics of the interpreter profession."

According to defendant, at the plea hearing, the trial court erred in failing to place the interpreter's credentials on the record. He also contends that, at the sentencing hearing, the trial court erred in failing either to swear in the interpreter or to place her credentials on the record. The state contends that defendant waived both requirements.

■  We need not address either of the parties' contentions as to the trial court's failure to comply with the requirements of the statute, because the assignment is not reviewable. ORS 138.050(1) provides that a defendant who has pleaded guilty or no contest may take an appeal from a judgment only where the disposition either exceeds the maximum allowable by law or is unconstitutionally cruel or unusual. ORS 138.222 further provides that:

"(1)  Notwithstanding the provisions of ORS * * * 138.050, a sentence imposed for a judgment of conviction entered for a felony committed on or after November 1, 1989, may be reviewed only as provided by this section.

"* * * * *

"(4)  In any appeal, the appellate court may review a claim that:

"(a)  The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence;

"(b)  The sentencing court erred in ranking the crime seriousness classification of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes; or

"(c)  The sentencing court erred in failing to impose a minimum sentence that is prescribed by ORS 137.700 or 137.707."

In this case, defendant pleaded no contest. Under ORS 138.050, therefore, his conviction is not reviewable. To the extent that defendant challenges only the sentence, his claim of error still is unreviewable. The crime occurred after November 1, 1989. Our review of his appeal, therefore, is limited to the matters listed in ORS 138.222. Defendant appears to contend that the trial court's error is that it "failed to comply with requirements of law," as described in ORS

138.222(4)(a). Not just any failure to comply with the law is reviewable on direct appeal, however. The statute refers to a failure to comply with the requirements of the law "in imposing or failing to impose a sentence." The question, then, is whether failing to comply with the law "in imposing or failing to impose a sentence" includes failing to certify an interpreter. We conclude that it does not.

We begin with the text of the statute. It refers to a failure to comply with the law "in imposing" a sentence or in "*failing to impose*" a sentence. The language suggests that the focus of the statute is the sentence itself, not procedures that lead to the actual imposition of the sentence. To be sure, that significantly narrows the scope of matters reviewable on *direct* appeal. But that is precisely what the legislature intended. As the Supreme Court explained in *State ex rel Huddleston v. Sawyer*, 324 Or 597, 607, 932 P2d 1145, *cert den* ___ US ___ , 118 S Ct 557, 139 L Ed 2d 399 (1997), "[t]he purpose of ORS 138.222, as revealed in the legislative history, was to curtail appellate review and reduce the number of appeals."

Consistent with that purpose, the courts of this state have construed ORS 138.222 to apply only to the lawfulness of the sentence itself, not the procedures by which it was imposed. Relevant to the point is the Supreme Court's decision in *State v. Adams*, 315 Or 359, 847 P2d 397 (1993), in which the court rejected the defendant's contention that the failure of the trial court to make findings in support of a departure sentence was reviewable under ORS 138.222. Even more to the point is our decision in *State v. Henderson*, 116 Or App 604, 843 P2d 459 (1992), *mod on other grounds* 124 Or App 426, 861 P2d 406 (1993). In that case, the trial court sentenced defendant on a guilty plea under one statute. The court had second thoughts, vacated the original sentence and imposed a different—and longer—sentence under a different statute. Defendant appealed, challenging the authority of the court to vacate the original sentence. We held that the matter was not reviewable under ORS 138.222(4)(a). We explained:

"Under ORS 138.222(4)(a), in any appeal we may review a claim that the sentencing court failed to comply with the

sentencing requirements. However, that subsection is subject to the general provision that a *sentence* may be reviewed under the provisions of ORS 138.222. ORS 138.222(1). Defendant's argument challenges the vacation of the original sentence, not the sentence."

*Henderson*, 116 Or App at 606 (emphasis in original).

It bears emphasis that, merely because a given matter is not subject to review on *direct* appeal does not mean that it is beyond appellate review. Other remedies remain available, depending on the particular challenge asserted by the defendant. For example, a challenge to the constitutionality of a sentence that is within the presumptive sentence prescribed by the felony sentencing guidelines is beyond the scope of direct appellate review, as provided in ORS 138.222(2)(a). The matter nevertheless may be subject to direct Supreme Court review in original mandamus. That was the case in *Huddleston*, in which the court held that, precisely because of the narrow scope of direct appellate review under ORS 138.222(4)(a), the state could proceed in mandamus to challenge the trial court's decision as to the constitutionality of the defendant's mandatory sentence. *Huddleston*, 324 Or at 608.

Similarly, post-conviction relief is available expressly for those cases in which a defendant wishes to assert a challenge to the constitutionality of a conviction that could not have been asserted on direct appeal. ORS 138.550(2). Thus, for example, a defendant who wishes to assert the unconstitutionality of a conviction on the ground of counsel's failure to advise of the consequences of a guilty plea may do so in a post-conviction petition. *See, e.g., Stelts v. State of Oregon*, 299 Or 252, 701 P2d 1047 (1985) (failure to understand that consequences of guilty plea would include waiving confrontation rights); *Castro v. Maass*, 139 Or App 69, 73, 910 P2d 1156 (1996) (counsel failed to explain consequences of stipulated facts trial).

In light of the foregoing authority, it is clear that defendant's challenge in this case is not reviewable on direct appeal. The failure to certify an interpreter is not an error of law "in imposing or failing to impose a sentence" any more than was a failure to make departure findings, as in *Adams*,

or the asserted improper vacation of a sentence, as in *Henderson*. It concerns the procedure by which the sentence is imposed, not the sentence itself. As we plainly stated in *Henderson*, only the sentence itself is subject to direct appellate review under ORS 138.222(4)(a).

The concurrence insists that the failure to certify an interpreter is an error of law "in imposing or failing to impose a sentence." Its reasoning, however, does not confront the language of the statute or the cases construing it as we have set forth above. Instead, the concurrence asserts, in syllogistic fashion that, (1) ORS 138.222 was intended to permit review of "illegal" sentences, which includes sentences imposed by improper processes, 160 Or App at 192; (2) a sentence imposed on a defendant who did not understand the nature of the proceedings would be an "illegal" sentence, 160 Or App at 192-93; (3) therefore, a challenge based on a defendant's failure to understand the proceedings is reviewable under ORS 138.222, 160 Or App at 194 n 2.

The syllogism, however, rests on a false premise, namely, that ORS 138.222 was intended to permit broadly a review of any "illegal" sentence, whatever the source of the illegality. The defendants in *Adams* and *Henderson* asserted that they were being subjected to an "illegal" sentence, and, in both cases, the court held that their claims were not subject to review on direct appeal under ORS 138.222. The language of ORS 138.222(4)(a) is narrower than the concurrence suggests, and we are not free to ignore that fact. ORS 174.020.

The concurrence emphasizes the importance of interpreter certification. The emphasis is entirely appropriate, for the ability of an accused to understand the nature of a criminal proceeding is essential to the fair disposition of criminal charges against him or her. But it simply does not follow that, because important constitutional rights may be implicated in the procedure by which a sentence is imposed, those rights must be vindicated on *direct* appeal under ORS 138.222(4)(a). Important constitutional rights also were

implicated in *Huddleston*—including federal Equal Protection and Guaranty Clause rights, as well as state constitutional rights to equal privileges and immunities and of allocution—yet the court held that they were not subject to review on direct appeal. *Id.* at 608.

In that regard, it bears repeating that merely because a matter is not reviewable on direct appeal does not mean that the matter is not reviewable at all. A challenge to the constitutionality of a sentence not subject to direct appellate review under ORS 138.222, for example, remains subject to review, either in post-conviction or mandamus proceedings. Thus, the concurrence's accusation that, by holding defendant's challenge in this case unreviewable, we render the interpreter certification statutes "mostly meaningless in criminal cases," 160 Or App at 194, is simply incorrect.

■       Defendant also contends that the trial court erred in imposing a unitary assessment and an award of attorney fees. Both matters may be resolved summarily. As to the unitary assessment, defendant contends that the trial court erred in imposing the fee without making a finding as to defendant's ability to pay. The unitary assessment was imposed pursuant to ORS 137.290 (1995), which provided, in part:

> "(1)   In all cases of conviction for the commission of a crime * * * the trial court * * * shall impose upon the defendant, in addition to any other monetary obligation imposed, a unitary assessment under this section. * * * The unitary assessment is a penal obligation in the nature of a fine and shall be in an amount as follows:

> "(a)   $94 in the case of a felony."

The statute further provides that the trial court may, in its discretion, waive the payment of the unitary assessment if, among other reasons, the court concludes that the fine will unduly burden the defendant in light of available financial resources and other obligations. ORS 137.290(3). The statute does not impose an affirmative obligation on the trial court to make any particular findings as a predicate to imposing the assessment in the first place.

As to the award of attorney fees, defendant entered no objection before the trial court and may not assert the error for the first time on appeal. *State v. Daniel*, 115 Or App 177, 178, 836 P2d 1366 (1992).

Affirmed.

**EDMONDS, J.,** concurring.

The majority holds that defendant's assignment of error that his sentencing hearing was held in violation of ORS 45.275 is not reviewable under ORS 138.222[1] because he pled no contest. In rejecting defendant's assignment, the majority reasons:

> "The statute refers to a failure to comply with the requirements of the law 'in imposing or failing to impose a sentence.' The question, then, is whether failing to comply with the law 'in imposing or failing to impose a sentence' includes failing to certify an interpreter. We conclude that it does not."

160 Or App at 185-86. The majority is wrong.

In its brief, the state says:

> "[t]he state recognizes that trying a criminal defendant in a court in which he cannot understand the proceedings because he does not speak or understand English and is not afforded an interpreter could constitute a Due Process or other constitutional violation."

The state is correct. Generally, courts have held that where the accused does not understand or speak English well enough to comprehend or communicate adequately in a criminal proceeding, the accused's rights to fundamental fairness and due process of law including the right to participate in the proceeding, to know and defend against the accusations and to advise counsel require that a qualified interpreter be provided. *See, e.g., U.S. v. Mayans*, 17 F2d 1174, 1179-81 (9th Cir) (1994); *United States ex rel Negron v. New York*, 434 F3d 386 (2nd Cir) (1970); *see also* Thomas M. Fleming, Annotation, *Right of Accused to Have Evidence or Court Proceedings*

---

[1] ORS 138.222(4)(a) provides for an appeal from a guilty or no-contest plea when "[t]he sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence."

*Interpreted, Because Accused or Other Participant Is Not Proficient in the Language Used*, 32 ALR 5th 149 (1995). Under the majority's construction of ORS 138.222, an appellant would be denied direct appellate review of such a due process violation. Meeting the requirements of ORS 45.275 has everything to do with fundamental fairness, the essence of a lawful sentence.

ORS 45.275 provides, in pertinent part:

"(1)   The court shall appoint a qualified interpreter in a civil or criminal proceeding whenever it is necessary:

"(a)   To interpret the proceedings to a non-English speaking party;

"(b)   To interpret the testimony of a non-English speaking party or witness; or

"(c)   To assist the court in performing the duties and responsibilities of the court.

"* * * * *

"(7)   Any person serving as an interpreter for the court in a civil or criminal proceeding shall state or submit the person's qualifications on the record unless waived or otherwise stipulated to by the parties or counsel for the parties. An interpreter for the court shall swear or affirm under oath to make a true and impartial translation of the proceedings in an understandable manner using the interpreter's best skills and judgment in accordance with the standards and ethics of the interpreter profession."

It is the duty of a sentencing court in Oregon to ascertain and impose sentence in accordance with the rules of the Criminal Justice Commission unless otherwise directed by law. ORS 137.010. If the conviction on which sentence is to be imposed is a felony, then the defendant "shall be personally present." ORS 137.030. For purposes of assisting the court in determining the proper sentence, the court relies on a previously prepared presentence report. ORS 137.077. A defendant may file a written motion to correct any factual errors in the criminal history and the presentence report. If the state disagrees with the proposed corrections, it has the

burden of proving any disputed part of the defendant's criminal history at the time of sentencing and is entitled to produce evidence to meet its burden the defendant is entitled to rebut that evidence, and the trial court is required to correct any error that it finds in the presentence report as a result of the evidentiary hearing at the time of sentencing. ORS 137.079.

Also, the court at the time of sentencing may hear evidence of aggravation and mitigation. ORS 137.080. A defendant, if he or she consents to be examined as a witness, may testify as to aggravating or mitigating circumstances. ORS 137.100. Additionally, the right of a defendant to allocution at a sentencing hearing exists under Article I, section 11, of the Oregon Constitution. Thus, a defendant who is unable to comprehend what is occurring in a sentencing hearing because of a lack of proficiency in the English language is in a position that is no different a position from that of a defendant who is mentally incompetent to understand the nature of the proceedings and to assist counsel. In sum, it is implicit in the statutory requirements for sentencing that a defendant understand the procedures and evidentiary matters that arise during the sentencing hearing. Otherwise, the sentencing court cannot properly perform its sentencing function under the law, and the defendant is effectively denied those rights given to him by the constitutions and the legislature.

The relationship of ORS 45.275 to ORS 138.222 is apparent from the face of the statutes. Subsection 4 of ORS 138.222 was first enacted in 1989. Or Laws 1989, ch 790, § 21. In 1993, the legislature amended ORS 138.222 to permit appellate review of "illegal sentences" unless the defendant agreed to a specific sentence. *State v. Kephart,* 320 Or 433, 445, 887 P2d 774 (1994). In *State v. Cook,* 108 Or App 576, 581, 816 P2d 697 (1991), *rev den* 312 Or 588 (1992), we noted that under subsection 4, "testimony before the Senate Judiciary Committee was to the effect that an appeal was to be available only for an 'illegal' sentence." In *State v. Fern,* 110 Or App 185, 187, 822 P2d 1210 (1991), we said, "[r]eview of a claim that a sentencing court failed to follow a constitutional mandate in imposing sentence is subject to review under ORS 138.222(4)(a)." Consequently, subsection 4 is part of the overall scheme of ORS 138.222 to ensure review of illegal

sentences. When held in juxtaposition with ORS 138.222, ORS 45.275 provides for statutory guarantees so that the sentencing process for non-English speaking defendants is conducted in a constitutional and legal manner that permits the defendants' meaningful participation. The procedural and substantive protections embodied in the sentencing process under Oregon statutes are of little consequence if they are not comprehended by the defendants. Because the operative language in ORS 138.222(4) affords review of errors regarding "requirements of law" that pertain to the imposition of a sentence, it necessarily follows that the legislature intended that the requirements of ORS 45.275 be incorporated into the sentencing process.

The importance of non-English speaking defendants understanding sentencing proceedings is further underscored by the legislative history of ORS 45.275. In 1993, ORS 45.275 was amended by Senate Bill 229 to require the certification of interpreters by the court before they could perform in-court interpretation functions. The bill was drafted by the Supreme Court Task Force on Race and Legal Services. Then Chief Justice Edwin Peterson presented testimony to the Senate Judiciary Committee in support of the bill. He told the committee:

"[T]he task force looking into the racial issues problem has been sitting around the state holding public hearings * * * and there is no question that the biggest problem that has come out of those hearings relates to the problems that non-English speaking people have in Oregon courts. There is no question that that is the most significant problem and related to that is the fact that we've heard a lot of testimony in our task force concerning the lack of qualified interpreters. It's not at all uncommon for the judge to pick somebody else just at random from the courtroom who speaks—who theoretically speaks—the language to be selected and that person has the responsibility of communicating to the non-English speaking person all of the nuances of court procedure and many interpreters just lack that ability."

Tape recording, Senate Committee on the Judiciary, SB 229, February 12, 1993, Tape 24, Side A.

Justice Peterson's testimony was supported by a letter from Angel Lopez, a member of the Oregon State Bar. In his letter, Lopez reported:

> "As I am a bilingual, Spanish-speaking attorney and have a significant number of Spanish-speaking clients, I have come to the interpreter's rescue many a time, frequently by advising the court, as an officer of the court, of errors in translation. Sometimes the errors are harmless. Sometimes they are not. With regard to the latter, I shudder to think of all the courts in all the counties of Oregon where such errors go undetected and justice is fettered by undertrained, unlicensed interpreters whose only sin is that they are doing the best they can."

Testimony, Senate Committee on the Judiciary, SB 229, February 12, 1993, Ex A (statement of Justice Edwin Peterson).

Most criminal cases are resolved by guilty or no contest pleas. Because of the refusal of this court on this day to review a violation of ORS 45.275(7) as a "requirement of law" under ORS 138.222(4)(a), we make ORS 45.275 mostly meaningless in criminal cases. Future defendants could be denied qualified interpreters in sentencing hearings with impunity because, under the majority's reasoning, there is no right to review in the event of a violation. The legislative purpose of ORS 45.275 is clear. A legislature, enlightened by the testimony on the bill before it that became ORS 45.275 could not have intended that ORS 138.222 (4) would prevent review of violations of ORS 45.275 in sentencing hearings, particularly in light of the liberty interests at stake.[2]

---

[2] The majority's analysis relies heavily on the holdings in *State v. Adams*, 315 Or 359, 847 P2d 397 (1993), and *State v. Henderson*, 116 Or App 604, 843 P2d 459 (1992), *mod on other grounds* 124 Or App 426, 861 P2d 406 (1993). In *Henderson*, the defendant initially pled guilty and was sentenced to prison under the sentencing guidelines. The trial court vacated the original sentence and sentenced him to life imprisonment with a 25-year minimum pursuant to ORS 163.115(3). On appeal, the defendant argued that the court was without authority to vacate the original sentence. We held that the argument raised on appeal was not reviewable because it did not focus on the lawfulness of the *sentence* imposed and appealed from, but on the exercise of authority to *vacate* the original sentence. In contrast, here defendant's argument focuses on the integrity of the sentence itself, *i.e.*, a sentence imposed without compliance with the statutory, procedural safeguards for a lawful sentence.

In *Adams*, the issue was whether ORS 138.222 precluded appellate review of a sentence imposed pursuant to an agreement between the defendant and the state.

In this case, the state does not contest that the trial court failed to comply with the requirements of ORS 45.275(7). The person serving as the interpreter did not state her credentials on the record or submit them to the court. The court merely administered an oath that the interpreter would "faithfully perform the duties of interpreter" and "correctly interpret the questions and the answers given thereto," and it made no inquiry about her qualifications. Moreover, the state does not argue that the assignment of error is nonreviewable. Rather, it argues that defendant waived any objection under ORS 45.275(7) on appeal, because he did not object in the trial court. I turn to that issue.

In *State v. Dam*, 111 Or App 15, 825 P2d 286, *rev den* 313 Or 300 (1992), the defendant appeared at trial with an interpreter that he and the state had agreed upon. He made no objection when she was sworn and later when her qualifications were recited. On appeal, he contended that the trial court erred in not appointing a qualified interpreter to translate. We rejected that argument, ruling "[t]here is simply no factual basis in the record to support the contentions made on appeal and they were not preserved." 111 Or App at 18. When a second interpreter was used after the first day of trial, again without objection, we again ruled that his contention was not supported by the record and that he had shown no prejudice.

Here, defense counsel, defendant and the interpreter appeared in court to enter a plea. Defense counsel told the trial court that the petition to enter a no contest plea had been reviewed with defendant "with the assistance" of the interpreter and that it had been translated "in total" by her. The trial court then questioned defendant in English as to whether he understood his rights contained in the plea petition when he went over them with his attorney, and defendant answered affirmatively. At the sentencing hearing,

---

The court held that the legislature did not intend such a sentence to be reviewable, relying on legislative history to support its decision. Neither *Adams* nor *Henderson* dealt with issues that focused on the integrity of the sentencing process and do not support the majority's assertion that review under ORS 138.222(4)(a) is limited to only certain kinds of illegal sentences.

defense counsel told the court, "[defendant] does speak English well, but I think it would be best to have the interpreter." When asked by the court if he understood the sentence recommendations being made by counsel, defendant said "yes." When asked if he had anything further to add before sentence was imposed, he explained to the court that he did not participate fully in the disturbances that the district attorney had described in the hearing. Our reasoning in *Dam* is applicable. Defendant has not preserved the issue that he raises on appeal and has not demonstrated prejudice from the failure of the interpreter to put her qualifications on the record.

Accordingly, I concur with the majority's result, but not with its wholesale disregard of the requirements of ORS 45.275 in sentencing hearings.

Armstrong and Wollheim, JJ., join in this concurrence.