Argued and submitted February 22, affirmed May 19, 1999

## STATE OF OREGON,
*Respondent,*

*v.*

## ALBERT MENDEZ QUINTERO,
*Appellant.*

(97C-20824; CA A100053)

982 P2d 543

Jesse Wm. Barton, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Wollheim and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant was convicted of one count of attempted rape in the first degree, ORS 163.375, and two counts of sexual abuse in the first degree, ORS 163.427.[1] On appeal, defendant contends that the sentence imposed by the trial court violated the "400 percent rule," which limits consecutive sentences under the sentencing guidelines, OAR 213-008-0007. The state contends that defendant's claim of error is unpreserved and unreviewable and, in any event, that the sentence was lawful. We conclude that the sentence was erroneous but, for the reasons that follow, decline to review it. Therefore, we affirm.

The indictment charged defendant with five offenses arising from a single incident in which he sexually assaulted his 16-year-old daughter. In addition to the three offenses for which defendant was ultimately convicted, he was also charged with single counts of sodomy in the first degree, ORS 163.405, and unlawful sexual penetration in the first degree, ORS 163.411, each Ballot Measure 11 offenses. Pursuant to a written plea agreement, the trial court dismissed the sodomy and unlawful sexual penetration charges and defendant pled no contest to the remaining counts. Under the plea agreement, the state agreed to limit its recommendation to concurrent sentences on the two sexual abuse counts but reserved the right to request the court to (1) impose a 36-month departure sentence on the attempted rape conviction, and (2) sentence that conviction consecutively to the sexual abuse counts. While defendant did not stipulate to the specific terms proposed by the state, he agreed that the state could seek such a sentence in consideration of the state's sentencing concessions.

At sentencing, the trial court followed the state's recommendation. The court sentenced defendant at gridblock 8-I on the two sexual abuse convictions and at gridblock 7-I

---

[1] The sexual abuse convictions were each subject to 75-month mandatory minimum sentences under Ballot Measure 11. ORS 137.700(2)(a)(P). The attempted rape charge was not subject to Measure 11.

for the attempted rape conviction. Defendant does not challenge those gridblock designations on appeal. The court sentenced defendant to concurrent 75-month incarcerative terms on each of the sexual abuse counts, pursuant to the mandatory minimum requirements of ORS 137.700. The court also imposed a 36-month sentence, a dispositional and durational departure, on the attempted rape charge. Defendant's total sentence was 111 months. He did not object to the length of his sentence in the trial court.

On appeal, defendant contends that the trial court could not lawfully sentence him to a term of imprisonment in excess of 75 months, the duration of the concurrent sentences on the sexual abuse convictions. He correctly observes that the first level 8-I conviction for first-degree sexual abuse was his primary offense, since it had the highest crime seriousness ranking. OAR 213-003-0001(17).[2] Under the sentencing guidelines, that offense carries a presumptive term of 18 months' imprisonment. Therefore, he argues, the 39-month portion of the sentence in excess of 72 months violated the rule limiting the total consecutive departure sentence to 400 percent of the presumptive maximum for the primary offense. OAR 213-008-0007(3);[3] OAR 213-012-0020(2)(b);[4] *State v. Davis*, 315 Or 484, 492, 847 P2d 834 (1993).

■ The state responds that the claimed error is unreviewable because the sentences were imposed under a stipulated sentencing agreement. ORS 138.222(2)(d).[5] Defendant

---

[2] OAR 213-003-0001(17) provides that " '[p]rimary offense' means the offense of conviction with the highest crime seriousness ranking."

[3] OAR 213-008-0007(3) provides, in part:

"When a departure sentence is imposed for any individual offense sentenced consecutively, the incarceration term of that departure sentence shall not exceed twice the maximum incarceration term that may be imposed for that offense as provided in OAR 213-012-0020(2)(a)."

[4] OAR 213-012-0020(2)(b) provides:

"The total incarceration term of the consecutive sentences, including the incarceration term for the primary offense, shall not exceed twice the maximum presumptive incarceration term or the prison term defined in OAR 213-008-0005(1) imposed pursuant to a dispositional departure of the primary sentence except by departure as provided by OAR 213-008-0007."

[5] ORS 138.222 provides, in part:

"(2) Except as otherwise provided in subsection (4)(c) of this section, on appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989, the appellate court shall not review:

did not agree either to a departure sentence or to the imposition of consecutive sentences. In light of *State v. Kephart*, 320 Or 433, 446, 887 P2d 774 (1994),[6] we conclude that the sentencing error is not unreviewable under ORS 138.222(2). *See State v. Reeves*, 134 Or App 38, 40, 894 P2d 1170, *rev den* 321 Or 284 (1995) (because defendant did not specifically accede to departure sentence or agree that some of his sentences would be served consecutively, the court may review that part of sentence).

The state next contends that the claimed error is not preserved, is not "plain error," and therefore is not reviewable. Defendant concedes that his claim of error was not raised in the trial court and was therefore not preserved. However, he urges, based on this court's decision in *State v. Langdon*, 151 Or App 640, 646-47, 950 P2d 410 (1997), *rev allowed* 327 Or 431 (1998), that the alleged violation of the 400 percent rule is "a facially apparent egregious error," and we therefore should exercise our discretion to review it. *State v. Galvin*, 152 Or App 275, 278, 954 P2d 800 (1998); *State v. Skelton*, 153 Or App 580, 590, 957 P2d 585, *rev den* 327 Or 448 (1998).

In *Langdon,*

"we harmonized Measure 11's mandatory minimum sentencing provisions with the limits on consecutive sentences found in the sentencing guidelines. We held that, in cases involving consecutive sentences that include incarceration imposed under Measure 11, the trial court cannot ignore the guideline rules that limit the duration of consecutive sentences." *Skelton*, 153 Or App at 590.

First, the court should determine the mandatory minimum sentence for the Measure 11 offenses. Next, it should determine the maximum term available for all of the

---

"* * * * *

"(d) Any sentence resulting from a *stipulated sentencing agreement* between the state and the defendant which the sentencing court approves on the record." (Emphasis added.)

[6] In *Kephart,* the Supreme Court held that ORS 138.222(2)(d) permits review of sentences for illegality, unless certain specific stipulations, like those in ORS 135.407, are made and accepted by the court. No such specific stipulations were made in this case.

felony offenses under the guidelines rules, using the 400 percent rule. If the guideline maximum is less than the mandatory minimum, the court must impose the mandatory minimum for the Measure 11 offenses and impose concurrent sentences on the others. *Langdon*, 151 Or App at 647. If the guideline maximum is higher, the court has more discretion. "[T]he court must impose the mandatory minimum, but may impose guideline sentences up to the amount allowable under the * * * 400 percent rule * * *." *Skelton*, 153 Or App at 591.

The state argues that this case is distinguishable from *Langdon*, in which a guidelines offense was sentenced consecutively to Measure 11 charges. Here, the state contends that the trial court sentenced the guidelines charge first because it was committed first during the criminal episode. The trial court entered three separate judgments of conviction and expressly provided that the Measure 11 offenses were sentenced consecutively to the guidelines charge. Because the sexual abuse convictions were subject to Measure 11 and therefore were not limited by the 400 percent rule,[7] the state reasons that the Measure 11 sentences did not transgress the rule when imposed consecutive to a non-Measure 11 felony sentence. Therefore, it concludes that the 111-month sentence was permissible. We disagree. The result in *Langdon* did not depend on the order of sentencing the offenses. Moreover, irrespective of the order designated by the trial court, in this case Count 4 of the indictment, the first Measure 11 offense, was the primary offense for purposes of determining whether the consecutive sentences violated durational limits. *See* OAR 213-003-0001(17); OAR 253-012-0020(2)(b); OAR 253-008-0007(3).[8] Accordingly, *Langdon* is not materially distinguishable.

■ *Langdon* required the court to (1) first impose sentence on the Measure 11 offenses; (2) calculate the maximum

---

[7] *See Langdon*, 151 Or App at 646-47 ("Because Ballot Measure 11 sentences are mandatory sentences, they are not subject to the [ ] 400 percent limitation of OAR 213-012-0020.").

[8] We do not suggest that the trial court was required to order that the consecutive sentences be served in any particular order as a result of the designation of a primary offense. *See State v. Miller*, 114 Or App 235, 238, 835 P2d 131 (1992).

presumptive term of the primary offense under the guidelines; and (3) if the Measure 11 sentence was greater than the guidelines maximum, sentence the guidelines offenses concurrently. 151 Or App at 647. Because the primary Measure 11 sentence in this case—75 months—exceeded the 72-month maximum term available under the 400 percent rule, the court should not have imposed the guidelines sentence on the primary offense consecutively. *Id.* As in *Skelton*, we hold that the error was an error of law apparent on the face of the record that we may exercise our discretion to review. 153 Or App at 593. Therefore, we must determine whether to review that error. The principles stated in *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991), govern the exercise of our discretion:

> "[T]he appellate court must exercise its discretion to consider or not to consider the error, and if the court chooses to consider the error, the court must articulate its reasons for doing so. * * * This is not a requirement of mere form. A court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution. Such an action is contrary to the strong policies requiring preservation and raising of error." *Id.* at 382.

In *Skelton*, the defendant was convicted following a jury trial. 153 Or App at 583. There was no plea agreement. We exercised our discretion to review because the error "significantly affect[ed]" the defendant by adding 80 months to his sentence, and its correction could be accomplished with a minimum of judicial time and resources. *Id.* at 593.

■ This case presents materially different circumstances. Here, defendant obtained significant concessions in negotiating his plea agreement with the state. The state gave up the right to seek consecutive sentences on the two Measure 11 offenses. The 400 percent rule would not have barred consecutive sentences totaling 150 months on those convictions. Furthermore, the state dismissed two additional Measure 11 charges that would have carried mandatory minimum 100-month sentences in the event of conviction. Although he did not specifically stipulate to its imposition, defendant agreed that the trial court had discretion to impose a consecutive departure sentence up to 36 months on the guidelines offense in consideration of the other benefits he obtained

under the plea agreement. Defendant now seeks to reduce his sentence to 75 months, yet retain the sentencing concessions to which the state agreed and which the trial court followed. Defendant is in a poor position to complain should he be held to the agreement he made. Furthermore, if we were to remand this case for further sentencing, we would remand each and every count for resentencing, as we did in *Skelton*. ORS 138.222(5). In this case, the sentencing judge expressed the intention to sentence defendant as "far as [he] reasonably [could] in extending this sentence." Unlike *Skelton*, under these circumstances there is no reason to believe that correcting the error could be accomplished with a minimum of judicial time and resources. The reverse is almost certainly true. Under these circumstances, we decline to exercise our discretion to review the unpreserved sentencing error. Given our disposition of this case, we do not address the state's further argument that the error is unreviewable because the trial court has authority to correct it under ORS 138.083.[9]

Affirmed.

---

[9] ORS 138.083 provides, in part:

"(1) The sentencing court shall retain authority irrespective of any notice of appeal after entry of judgment of conviction to modify its judgment and sentence to correct any arithmetic or clerical errors or to delete or modify any erroneous term in the judgment."