Argued and submitted November 5, 1992, decision of Court of Appeals reversed;
judgment of circuit court affirmed February 11, 1993

## STATE OF OREGON,
*Respondent on Review/*
*Petitioner on Review,*

*v.*

## TIMOTHY SCOTT ADAMS,
*Petitioner on Review/*
*Respondent on Review.*

(CC 90-1081; CA A66738; SC S39019, S39080)

847 P2d 397

Irene B. Taylor, Deputy Public Defender, Salem, argued the cause for petitioner on review/respondent on review Timothy Scott Adams. With her on the petition and the response was Sally L. Avera, Public Defender, Salem.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent on review/petitioner on review State of Oregon. With him on the petition were Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, Salem.

GRABER, J.

Van Hoomissen, J., filed a concurring opinion.

## GRABER, J.

■ The issue that we decide in this case relates to the scope of direct appellate review of a sentence imposed under the recently adopted sentencing guidelines: Does ORS 138.222 permit appellate review of a sentence imposed pursuant to an agreement between defendant and the state, where the sentencing court accepted defendant's stipulated sentencing guidelines grid block classification and approved the corresponding stipulated sentence on the record, and where defendant contends for the first time on appeal that the sentence was a "departure" sentence and that the sentencing court did not make the statutorily required findings on the record to support that sentence? We hold that ORS 138.222 precludes appellate review of defendant's sentence. Accordingly, we reverse the decision of the Court of Appeals, *State v. Adams*, 110 Or App 434, 823 P2d 992 (1992), and affirm the judgment of the circuit court.

Defendant was charged with murder, ORS 163.115, for a shooting that occurred on or about May 1, 1990. He filed a pretrial notice of his intent to rely on the defense of extreme emotional disturbance. ORS 163.135.

Because defendant committed the crime after November 1, 1989, a felony conviction for that crime is subject to the sentencing guidelines. ORS 137.010(1), 137.120(2). Under those guidelines, a conviction for murder carries a mandatory life sentence with a 10-year minimum plus the possibility of a 25-year minimum. ORS 163.115(3). If, however, defendant had prevailed on his defense, he would have been convicted of first-degree manslaughter. ORS 163.118(1)(b). Given defendant's criminal history, his maximum sentence under the sentencing guidelines for that offense would have been 70 months. OAR 253-04-001 and Appendix 1.

Based on the facts of the case, each side was concerned that the other could prevail if the case went to trial. The parties therefore negotiated a compromise plea agreement. When the parties appeared before the court,[1] the following exchange took place:

---

[1] The parties in this case proceeded under ORS 135.407, not under ORS 135.415, discussed by this court in *State v. McDonnell*, 313 Or 478, 837 P2d 941 (1992).

"[PROSECUTOR]: * * * It's my understanding at this time, Your Honor, that we have reached an agreement and I've conferred with the attorneys for the defense and they're in agreement and we're prepared at this time to propose the agreement to the Court to see if the Court will accept it.

"[COURT]: Very well.

"[PROSECUTOR]: It is my understanding that the defendant is willing to withdraw his plea of not guilty to the charge of Murder and plead guilty to the crime of Manslaughter in the First Degree. Actually he's gonna plead no contest to the crime of Manslaughter in the First Degree, and that he will get an agreed upon stipulated sentence by both sides of 84 months with the Department of Corrections, which under the new sentencing guidelines, Your Honor, would be 10-E on the grid. * * *

"[COURT]: Very well. [Defense counsel]?

"[DEFENSE COUNSEL]: That's correct, Your Honor. [Defendant] is here. We've discussed the proposed agreement with him. He's agreed to it. The stipulated sentence is above what he would have received had he been convicted of this charge, which we figure he would have been in grid block G-10, but he's agreed to the additional time as a means of settling this.

"* * * I'll tell the Court the reason for the no contest plea, and the settlement on this charge is * * * we realize that there's sufficient evidence on the other side of the case that the Jury could convict him of [murder], so that's the reason we're doing it the way we're doing it.

"[COURT]: Okay. [Defendant], I need to address some questions to you. I will tell you right off the start that the Court is prepared to accept that plea if you tender it. I want to review with you just briefly the statutory provisions that govern this trial and plea, and they are, as the Court understands it, controlled by the new sentencing guidelines where the Court has — each judge in this state is bound to follow those guidelines.

"* * * * *

"* * * I would tell you that if you are convicted of Murder, if you go to trial, the sentencing guidelines would fall somewhere — I would take it to be a sentence of either 120 months or 121 months * * *. Would that be correct, based on his criminal history? * * *

"[PROSECUTOR]: I believe he would probably fit in 11-G, Your Honor, which has a range from 129 to 134 months because he has four nonperson-type convictions.

"'* * * * *

"[COURT]: * * *

"I would tell you secondly, [defendant], that a plea of no contest, for all practical purposes on the records of the state, is a conviction * * *. Do you understand these matters? You've been able to go over with Counsel those matters?

"[DEFENDANT]: Yes, sir.

"'* * * * *

"[COURT]: Very well. So you're telling me that your plea is knowingly made by you and voluntarily made by you?

"[DEFENDANT]: Right.

"[COURT]: Very well. The Court will accept your plea and will accept the sentence imposed — that has been agreed upon.

"Is that a stipulated sentencing agreement?

"[PROSECUTOR]: Yes, Your Honor.

"'* * * * *

"[COURT]: Very well. You may — [Defendant], you may stand for sentencing.

"Pursuant to the stipulated plea agreement and the stipulated sentencing order, [defendant], the Court sentences you * * * for a term of 84 months * * *."

The judgment stated:

"FINDINGS: The applicable grid block is 10 G
     The stipulated grid block is 10 E
     The stipulated sentence is 84 months

"ORDERED: The defendant shall be sentenced to the legal and physical custody of the Corrections Division for a term of eighty-four (84) months."[2]

In summary, the trial court was advised by the prosecutor that, based on defendant's criminal history, his grid block classification on a conviction for murder would have been 11G. For the same reason, on a conviction for manslaughter, defendant's grid block classification would have been 10G. However, the parties agreed to a stipulated

---

[2] The court further ordered that defendant have a post-prison supervision term of 60 months.

grid block classification of 10E, expressly because the sentence to which they had agreed was within the presumptive range for that grid block. *See* ORS 135.407(1) and OAR 253-07-002(1) (an offender's criminal history classification shall be accurately represented to the sentencing judge in the plea agreement); ORS 135.407(2), ORS 135.407(3), and OAR 253-07-003 (subject to OAR 253-07-002 and the approval of the sentencing judge, the parties may stipulate to a grid block classification within the sentencing guidelines; if the sentencing judge accepts the stipulated grid block classification and imposes a sentence other than the presumptive sentence for the stipulated grid block, the sentence is a departure); ORS 135.407(4) and OAR 253-07-004 (the parties may stipulate to a specific sentence within the presumptive sentence range for the stipulated grid block classification).

Defendant did not suggest to the trial court that the sentence was a departure sentence, that findings should be made, OAR 253-08-001, or that appropriate findings could not be made. On appeal, however, he assigned as error the trial court's actions in "imposing a departure sentence" and in failing to state "findings of facts * * * to support the imposition of a departure sentence."

The Court of Appeals held, first, that it could review defendant's claim under ORS 138.222(4)(a), quoted below. *State v. Adams, supra,* 110 Or App at 436-37. Second, on the merits, the Court of Appeals held that the sentence here did not meet the requirements of ORS 135.407. *Id.* at 440. We disagree with the first holding and, consequently, do not reach the second.

"The right to appeal is statutory and subject to any limitations imposed by the statute conferring the right." *Logsdon v. State and Dell,* 234 Or 66, 70, 380 P2d 111 (1963). Here, the right to appeal is governed by ORS 138.222 and is subject to any limitations therein. ORS 138.222 provides in part:

"(2)   On appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989, the appellate court shall not review:

"* * * * *

"(d)  *Any sentence* resulting from an agreement between the state and the defendant which the sentencing court approves on the record.

"(e)  Except as authorized in subsections (3) and (4) of this section, *any other issue related to sentencing*.

"\* \* \* \* \*

"(4)  In any appeal, the appellate court may review a claim that:

"(a)  The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence[.]" (Emphasis added.)

When construing a statute, we seek to ascertain the legislature's intent. ORS 174.020; *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174, 818 P2d 1270 (1991). We begin with the text and context of the statute. ORS 174.010; *Porter v. Hill*, 314 Or 86, 91, 838 P2d 45 (1992).

■  Defendant first argues that ORS 138.222(3) and (4) are exceptions to *all* of the limitations in ORS 138.222(2). We disagree. The exception is stated in paragraph (e) of subsection (2) and not in the introductory portion of subsection (2). The wording of the statute clearly demonstrates that ORS 138.222(3) and (4) are exceptions only to ORS 138.222(2)(e).

■  Alternatively, defendant argues that ORS 138.222 (2)(a) through (d) are narrow prohibitions, precluding review only of the "sentences" described therein — that is, the length of those sentences. He contends that the phrase "any other issue related to sentencing" in ORS 138.222(2)(e) refers to matters other than the length of the sentence imposed and that it includes, as in this case, the procedure that the trial court used in arriving at that sentence. Defendant argues that his claim that the sentencing court did not follow a certain procedure in imposing his sentence is therefore an "issue related to sentencing" that is reviewable by an appellate court under ORS 138.222(2)(e) and 138.222(4)(a).

■  We are not free to ignore the fact that the legislature used different terms in related portions of the statute. *See Emerald PUD V. PP&L*, 76 Or App 583, 593, 711 P2d 179 (1985), *aff'd* 302 Or 256, 729 P2d 552 (1986) (when the legislature uses different terms in related statutes, different meanings likely were intended); *see also Kankkonen v.*

*Hendrickson*, 232 Or 49, 67, 374 P2d 393 (1962) (in interpreting a statute, "effect should be given to every word, phrase, sentence and section," if possible). *Cf. Knapp v. City of North Bend*, 304 Or 34, 41, 741 P2d 505 (1987) (in absence of any indication to the contrary, it is likely that particular statutory term has same meaning throughout same statute). Because ORS 138.222 does not explain or define the term "any other issue related to sentencing" and because the meaning of the term is not clear, we turn to the legislative history of the statute to aid us. *Boone v. Wright*, 314 Or 135, 138, 836 P2d 727 (1992).

ORS 138.222 is a provision of the sentencing guidelines statute that the legislature adopted in 1989. There was considerable discussion, in the Senate Committee on the Judiciary, of the scope of appellate review of sentences and sentencing issues. *See* Tape Recording, Senate Committee on the Judiciary, April 3, 1989, Tape 90, Side A, and Tape 91, Side B; Tape Recording, Senate Committee on the Judiciary, June 2, 1989, Tape 217, Side A. That discussion did not answer definitively the question before us. However, the floor debates do inform us about the purpose of ORS 138.222. *See Bartz v. State of Oregon*, 314 Or 353, 358, 839 P2d 217 (1992) (in construing a statute, court considered its purpose). In his statement on the Senate floor prior to passage of the sentencing guidelines measure, Senator Springer explained the purpose of ORS 138.222 as follows:

> "We have, again, worked * * * to limit those circumstances in which an appeal may be taken. Clearly we provide that this would affect only those sentences * * * on or after November 1. * * * We provide that the court will not review those sentences in that class if the sentence is resulting from an agreement between the state and the defendant which the sentencing court approves on the record." Tape Recording, Senate Floor Debate, June 15, 1989, Tape 184, Side A.

Defendant's proposed reading of ORS 138.222 is not consistent with the purpose of the sentencing guidelines, as revealed in the legislative history.

Moreover, defendant's proposed reading of ORS 138.222 would create an anomaly within that statute. Under ORS 138.222(5),

"The appellate court may reverse or affirm the sentence. If the appellate court concludes that the trial court's factual findings are not supported by evidence in the record or do not establish substantial or compelling reasons for a departure, it shall remand the case to the trial court for resentencing."

If, as defendant claims, that remedy were applicable to a sentence resulting from a plea agreement, a defendant who entered into such an agreement would be given its full benefit (here, the opportunity to plead to the lesser charge of manslaughter), while the state would be deprived of its side of the bargain (here, the certainty of a stipulated sentence without the need to prove that a departure sentence was warranted). Only by reading ORS 138.222(2)(d) to apply to the full range of issues related to a sentence resulting from a plea agreement can that peculiar result be avoided.

On balance, we conclude that the legislature did not intend that a sentence resulting from an agreement between a defendant and the state be reviewable on appeal. Accordingly, we hold that ORS 138.222 precludes appellate review of defendant's sentence resulting from a plea agreement between himself and the state.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**VAN HOOMISSEN, J.,** concurring.

I agree that ORS 138.222 precludes appellate review of defendant's sentence. I write separately to address two issues raised by this case that are not discussed by the majority.

In the Court of Appeals, defendant challenged only his sentence. He argued that the court could not impose the sentence that it did without making findings of substantial and compelling reasons to impose a departure sentence, which were not made. He asked that his conviction be reversed and that his case be remanded for a new trial. The Court of Appeals reversed and remanded for a new trial. In this court, defendant has changed his position. He now asks that his conviction be affirmed and that his case be remanded for resentencing only, arguing that the Court of Appeals lacked authority to remand for a new trial. I would agree with that argument if there were appellate jurisdiction in this case.

ORS 138.050 provides in part:

"(1)    A defendant who has pleaded guilty or no contest may only take an appeal from a judgment or order described in ORS 138.053 where the disposition:

"(a)    Exceeds the maximum allowable by law; or

"(b)    Is unconstitutionally cruel and unusual."

Defendant does not argue that his sentence exceeds the maximum allowable by law or that it is unconstitutionally cruel and unusual. Moreover, the scope of review on direct appeal from a sentence under ORS 138.222 is limited to review of the sentence itself. Nowhere in that statute is there authority on direct appeal to review procedural errors concerning the acceptance of the no contest plea itself. Neither ORS 135.432 nor ORS 135.407, cited by the Court of Appeals, gave that court authority to remand for a new trial. Even if a remand for resentencing was appropriate (in this case it was not appropriate), the Court of Appeals should not have reversed defendant's conviction. ORS 138.050; ORS 138.222(4) and (5); *cf. State v. Loyer*, 303 Or 612, 740 P2d 177 (1987) (ORS 138.050 provides a limited scope of review).

Next, defendant was represented by counsel. The parties negotiated a plea agreement that included a stipulated grid block classification, expressly because the sentence on which they had agreed was within the presumptive range for that grid block. Defense counsel specifically acknowledged that the state's evidence would support a conviction for murder. After the prosecutor explained the factual basis for the charge, the plea agreement was accepted by the trial court. Defendant does not argue that the state has failed to honor the plea agreement. That should end the discussion.

Generally, I see no reason why a criminal defendant should not be permitted to stipulate to virtually anything that he or she chooses as a result of plea discussions. A defendant may plead guilty to the charge. Indeed, a defendant even may plead guilty to aggravated murder, which might result in a sentence of death. A defendant may waive his or her state and federal constitutional rights to counsel, trial, jury, confrontation, and cross-examination. A defendant may stipulate to the

admissibility of otherwise inadmissible evidence.[1] A defendant intentionally may fail to raise an otherwise valid objection at trial and, thus, waive the right to raise the issue on appeal. The parties may stipulate to facts. *State v. Lyon*, 304 Or 221, 231, 744 P2d 231 (1987). Why, then, shouldn't he or she be permitted to stipulate to other things?

Of course, the parties may not stipulate to certain things, such as to the jurisdiction of the court, *see, e.g., State v. Miner*, 218 Or 502, 504, 342 P2d 773 (1959) (if the court has lost jurisdiction, the parties could not, by stipulation, confer such jurisdiction), or that a defendant could be sentenced to a term of imprisonment beyond the statutory maximum sentence prescribed by law. Generally, the parties may not stipulate as to the law.

I merely suggest a more generalized proposition of law, *i.e.,* that, *subject to the approval of the court,* the parties should be permitted to stipulate to anything that the court has the authority to approve. This seems somewhat like analogizing plea agreements to contracts, *i.e.,* they create their own "law" and are enforceable so long as they are approved by the court and do not violate public policy.[2]

---

[1] *But see State v. Lyon*, 304 Or 221, 232, 744 P2d 231 (1987), in which this court determined on policy grounds that it will not recognize a stipulation to the admissibility of polygraph evidence, even if the defendant is represented by counsel. The majority of jurisdictions that have considered the question have taken the opposite view. *State v. Lyon* also stands for the proposition, however, that where the admissibility of evidence is conditioned on the satisfaction of certain foundational requirements, the parties may stipulate to the satisfaction of those requirements and will be bound by that stipulation. *Id.* at 231.

[2] There is some discussion of this concept in *State v. McDonnell*, 310 Or 98, 114-16, 794 P2d 780 (1990) (Fadeley, J., concurring in part, dissenting in part).