Argued and submitted February 26, affirmed May 12, reconsideration denied July 7, petition for review denied July 27, 1993 (317 Or 272)

STATE OF OREGON,
*Respondent,*

*v.*

STEPHEN GREGORY JOHNSTON,
*Appellant.*

(91C21413; CA A73980)

851 P2d 1156

Eric R. Johansen, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Amy E. Alpaugh, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

### De MUNIZ, J.

Defendant pled guilty to three counts of robbery in the first degree with a firearm, ORS 164.415; ORS 161.610, pursuant to an agreement in which the state agreed to dismiss a charge of attempted murder and not to file a pending robbery charge. The parties agreed that defendant's grid block was 9-G and that the state would recommend a maximum "time" of 108 months. The court imposed consecutive departure sentences with a total term of incarceration of 108 months. On appeal, defendant argues that the departure sentences are not supported by substantial and compelling reasons. OAR 253-08-001.

Defendant was sentenced following a guilty plea made pursuant to a plea agreement. The threshold issue is whether we can review his claim of error. ORS 138.222(2) provides, in part:

"On appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989, the appellate court shall not review:

"* * * * *

"(d) Any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record.

"(e) Except as authorized in subsections (3) and (4) of this section, any other issue related to sentencing."

In *State v. Adams*, 315 Or 359, 367, 847 P2d 397 (1993), the Supreme Court held that

"ORS 138.222 precludes appellate review of defendant's sentence resulting from a plea agreement between himself and the state."

In *Adams*, the agreement was one that included both a plea to a reduced charge and an agreed-upon term of incarceration. The defendant was charged with murder. He and the state agreed that he would plead no contest to manslaughter in the first degree. On the basis of his criminal history, the correct grid block would have been 10-G with a presumptive range of 66 to 70 months. However, the defendant and the state agreed to a stipulated sentence of 84 months, within the presumptive grid block of 10-E. *State v. Adams*, 110 Or App 434, 436, 823 P2d 992 (1992). That stipulation was to a grid

block that the defendant and the state knew did not accurately reflect the defendant's criminal history score.

On appeal, the defendant argued that any representation regarding criminal history had to be accurate under ORS 135.407 and OAR 253-07-002. In the light of the importance of criminal history to the guidelines scheme, *see, e.g., Supplement Oregon Sentencing Guidelines Implementation Manual* 9 (1992), we held that the defendant's claim that his sentence was not based on an accurate criminal history was reviewable under ORS 138.222(4)(a), which allows review "[i]n any appeal" of a claim that the sentencing court failed to comply with the "requirements of law." *State v. Adams, supra,* 110 Or App at 436. The Supreme Court held that we erred in concluding that ORS 138.222(4)(a) allowed review of sentences described in ORS 138.222(2)(d).[1] ORS 138.222(3) and (4) apply only to ORS 138.222(2)(e). *State v. Adams, supra,* 315 Or at 365. As a result of that holding, any claim that a sentence was imposed without compliance with the requirements of law or is a departure sentence not supported by substantial and compelling reasons may not be reviewed if the sentence "resulted from" a plea agreement.

However, there is more than one kind of plea agreement, *see* ORS 135.405, and the agreement here differs from the one in *Adams.* Defendant agreed to plead guilty to a charge, agreed to a grid block classification and agreed that the state could recommend a maximum term of incarceration of 108 months. Under that kind of agreement, a defendant retains the right to try to persuade the court to impose a sentence other than the one recommended by the state. Therefore, it can be argued that the defendant has not "bargained" for the actual sentence to be imposed and, thus, that the sentence does not "result from" the agreement. On the other hand, the prosecutor's recommendation regarding an appropriate maximum term of incarceration is part of the exchange for which the defendant agreed to plead guilty. *See Correale v. United States,* 479 F2d 944, 949 (1st Cir 1973). Here, for example, defendant's agreement established that

---

[1] The drafters of the guidelines failed in their attempt through ORS 138.222(4) to provide for review of any claimed "illegal" sentence. *See* Tape Recording, Senate Judiciary Committee, June 2, 1989, Tape 217, Side A (testimony of Kathleen Bogan, Executive Director, Criminal Justice Council).

sentence would be imposed on three convictions, calculated according to grid block 9-G. With departures, the rules would have authorized a sentence up to 160 months. However, defendant and the state agreed that the state could recommend incarceration up to 108 months.[2] Thus, it may be argued that the sentence has "resulted from" the agreement.

We conclude that ORS 138.222(2)(d) was intended to cover the agreement here. In the first place, the language of the statute is not restrictive. It does not preclude review only of "stipulated sentences" but rather, as the Supreme Court emphasized in *Adams*, of *"[a]ny sentence* resulting from an agreement." 315 Or at 365. Secondly, while the commentary is not controlling, it demonstrates that the drafters intended a broad preclusion of review of sentences after plea agreements. ORS 135.407 was enacted as part of the guidelines legislation and sets out the requirements for negotiated pleas. The commentary to that section states, in part:

> "The parties may stipulate to an appropriate grid-block classification for an offender *without also agreeing to the actual sentence to be imposed*. If this situation occurs, the sentencing judge is free to impose the presumptive sentence or to depart from the guidelines. If a departure sentence is imposed, it must be supported by substantial and compelling reasons as required by OAR 253-08-001. *It is not, however, appealable as a departure sentence pursuant to [ORS 138.222(3)] because such appeal is precluded as a plea-agreement sentence. See* [ORS 138.222(2)(d)].
>
> "* * * * *
>
> "If the parties stipulate to an appropriate grid-block classification for an offender, they may also stipulate to a specific sentence outside the presumptive sentence range. If the

---

[2] Subject to the limitations provided in ORS 135.432, under any plea agreement, what sentence to impose remains a matter for the court's determination. Here, for example, the seven-page "petition to enter a plea" included the agreed dismissal of charges, grid block and sentencing recommendation and boiler plate language to comply with statutory or constitutional requirements to which defendant agreed. He acknowledged that the trial court *"can* impose 30 years of imprisonment [and] *must* impose 5 years of imprisonment." (Emphasis in original.) He also acknowledged that the actual incarceration would "primarily be determined by sentencing guidelines." He acknowledged that the agreement was only between him and the District Attorney, not the court, and that the state had agreed to recommend a certain sentence in return for his guilty plea, but that the court did not have to accept the recommendation and could impose any sentence it believed he deserved, up to 30 years.

sentencing judge accepts the agreement, the sentence must be imposed in a manner consistent with the rules for departures or optional probationary sentences. *Because the sentence results from a plea agreement, it will not be appealable. See* [ORS 138.222(2)(d)]." *Oregon Sentencing Guidelines Implementation Manual* 71 (1989). (Emphasis supplied.)

The example quoted in the first paragraph is the type of agreement involved here; the example in the second paragraph is the type of argeement involved in *Adams*.

More importantly, the legislative history shows that the legislature intended ORS 138.222(2)(d) to be inclusive. On the floor of the senate, Senator Grensky's explanation of negotiated pleas under the guidelines shows that the legislature was aware that there was more than one kind of plea agreement:

"After agreeing to a grid block classification by using the criminal history and crime seriousness, the parties may or may not agree to an actual sentence. If the parties — meaning the district attorney and defense lawyer — do not agree, the judge is free to impose what is known in the guidelines as a presumptive sentence or to depart. * * * Another scenario under plea bargaining — what might be that a district attorney and the defense counsel might agree to depart up or down themselves from their presumptive sentence. * * * In addition, a district attorney and a defense counsel might agree to a sentence within the presumptive sentence range of the grid block * * *." Senate Floor Debate, June 15, 1989, Tape 183, Side B; Tape 184, Side A.

Senator Springer then explained the appellate review provisions of the guidelines legislation:

"We have, however, constructed the appeals process in order to avoid a disproportionate or negative impact on our state Court of Appeals. * * * It's not our intent to adversely impact their workload. * * * We anticipate that, in the short run, there may be some additional cases to be decided interpreting these guidelines, [in addition to the 30 to 35% current criminal case load] but, again, we do not want to place any disproportionate or negative impact upon our Court of Appeals and we feel the language you'll find here [in ORS 138.222] does accomplish that goal.

"'* * * * *

"We have again worked very closely to limit those circumstances in which an appeal may be taken. * * * Furthermore, we limit, in fact *we provide that there shall not be review of a sentence resulting from an agreement* between the state and the defendant which the sentencing court approves on the record and by far the majority of cases we expect are going to be resolved as the result of negotiations and plea bargaining, which is the case today. 85% or more of the cases that are filed alleging felony offenses are plea bargained and most times they do result in a conviction and a judgment after a plea has been negotiated by the parties and this [ORS 138.222(2)(d)] recognizes that." Senate Floor Debate, June 15, 1989, Tape 184, Side A. (Emphasis supplied.)

The legislative history shows that ORS 138.222(2)(d) was not restricted to agreements with a stipulated term of incarceration.[3]

In *Adams*, the court noted that the legislative history demonstrated an intent to limit review of sentences following plea negotiations and that a plea agreement has benefits for both parties. It concluded that the reach of an agreement is broad:

"Only by reading ORS 138.222(2)(d) to apply to the full range of issues related to a sentence resulting from a plea agreement can that peculiar result be avoided [of a defendant who entered an agreement being given its full benefit while the state would be deprived of its side of the bargain].

"On balance, we conclude that the legislature did not intend that a sentence resulting from an agreement between a defendant and the state be reviewable on appeal." 315 Or at 367.

In this case, defendant's agreement was not without significant benefit to him: He would not have to stand trial on a charge of attempted murder and an additional robbery charge. While the actual sentence that the court would impose was within the court's discretion, defendant still

---

[3] That legislative history also shows that the legislature did not envision a contractual analysis of plea agreements. *But see State v. McDonnell*, 310 Or 98, 114-16, 794 P2d 780 (1990) (Fadeley, J., concurring in part; dissenting in part). That approach would create the appellate nightmare that Senator Springer repeatedly stressed that the legislature intended to avoid, not to mention the nightmare that would be created for the parties and courts below.

benefitted by facing a lesser sentence than he would have if he had been found guilty of attempted murder or an additional robbery. He also benefitted from knowing that the court's imposition of sentence was limited by the incarceration terms available under grid block 9-G. He also knew that the state would not recommend the maximum term of incarceration. In turn, the state benefitted from not having to prepare and try two additional charges, including one for attempted murder. Under ORS 138.222(2)(d) and *State v. Adams, supra,* we conclude that we may not review defendant's claim of error.

Affirmed.