No. 21 April 30, 2026 205

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

ADRIAN FERNANDEZ,
*Petitioner on Review.*

(CC 21CR40459) (CA A179207) (SC S071340)

On review from the Court of Appeals.*

Argued and submitted May 8, 2025.

Marc D. Brown, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the brief for petitioner on review. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the briefs were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Kelly Simon, ACLU of Oregon, Inc., Portland, filed the brief for *amici curiae*

American Civil Liberties Union and the American Civil Liberties Union of Oregon. Also on the brief was Julie A. Murray, American Civil Liberties Union Foundation, Washington, D.C.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, James, and Masih, Justices, and Powers, Judge, Justice pro tempore.**

FLYNN, C.J.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.

_____

 * Appeal from Lane County Circuit Court, Jay A. McAlpin, Judge. 334 Or App 81, 555 P3d 350 (2024).

 ** Bushong, J., did not participate in the consideration or decision of this case.

**FLYNN, C.J.**

The issue in this criminal case is whether defendant's challenge to the constitutionality of his sentence is reviewable on direct appeal. In the Court of Appeals, defendant argued that the trial court erred in applying a rule of the Oregon Sentencing Guidelines that, defendant contends, disproportionately penalizes the offense that defendant was convicted of, in violation of Article I, section 16, of the Oregon Constitution. If defendant's premise is correct, then he has identified the type of error that the Court of Appeals previously has held requires reversal of a defendant's sentence. *See, e.g.*, *State v. Simonson*, 243 Or App 535, 259 P3d 962 (2011), *rev den*, 353 Or 788 (2013). In this case, however, the Court of Appeals declined to reach the merits of defendant's argument, because it concluded that ORS 138.105 precluded appellate review of defendant's constitutional challenge. We reach a different conclusion about the scope of the appellate court's authority under that statute to review a criminal sentence. Accordingly, we reverse the decision of the Court of Appeals and remand for that court to consider the merits of defendant's assignment of error.

## BACKGROUND

Defendant pleaded guilty to first-degree online sexual corruption of a child, a felony subject to the sentencing guidelines. ORS 163.433; OAR 213-017-0004(12). At sentencing, the trial court calculated defendant's sentence according to the framework specified by the guidelines. Under that framework, an offender's presumptive sentence is determined according to a grid system by which the offender's criminal history is measured along one axis of the grid and the seriousness of the current crime along the other, with the grid block at which the two intersect prescribing the presumptive sentence for the conviction. *State v. Althouse*, 359 Or 668, 673, 375 P3d 475 (2016); OAR 213-004-0001 (identifying the two axes of the grid); *see State v. Lane*, 357 Or 619, 624, 355 P3d 914 (2015) (explaining that the sentencing "guidelines create a system of presumptive sentences based on the seriousness of the felony at issue and the defendant's criminal history).

At sentencing, defendant accepted the state's assertion that the guidelines classify his offense as belonging in crime seriousness category 8 and that the grid block at which that classification corresponds to his criminal history score specifies a presumptive sentencing range of 19-20 months' incarceration. *See* OAR 213-017-0004 (describing offenses that "are classified at crime category 8 on the Crime Seriousness Scale"). He argued, however, that using a crime seriousness score of 8 to determine the length of his sentence would violate the prohibition on disproportionate punishment set out in Article I, section 16. The trial court disagreed and imposed a sentence within the range prescribed by the grid block for defendant's offense and criminal history score.

On appeal, defendant assigned error to the trial court's decision to use the crime seriousness category 8 to calculate defendant's sentence. He argued that doing so made his penalty disproportionately severe, in violation of Article I, section 16, compared to other sex offenses that defendant described as "more serious" than, or "functionally equivalent to," the crime of which he was convicted. He explained that the offense of first-degree online sexual corruption of a child, to which the guidelines assign a crime seriousness score of 8, is established with proof that a defendant took "a substantial step toward physically meeting with or encountering the child." ORS 163.433. That makes his crime less serious, in defendant's view, than the crimes of third-degree rape and third-degree sodomy, which are assigned to crime seriousness category 6 under the guidelines even though they involve sexual intercourse with a person younger than 16. *See* ORS 163.355; ORS 163.385. And, he contends, it makes his crime the "functional equivalent" of attempted third-degree rape or attempted third-degree sodomy, which also involve a "substantial step" towards completion of those crimes yet are assigned only to crime seriousness category 4 under the guidelines. *See* OAR 213-004-0005 (explaining how attempt crimes are categorized). As a result, defendant asked the Court of Appeals to vacate the judgment and remand for resentencing. The court affirmed without reaching the merits of defendant's challenge, because it concluded that ORS 138.105 precludes

direct review of defendant's challenge. We granted defendant's petition for review to address that issue.

## DISCUSSION

In asserting that he has a right to challenge the constitutionality of his sentence on direct appeal, defendant correctly focuses on ORS 138.105. That provision sets out the statutory authority of the appellate court, in a criminal appeal, "to review the judgment or order being appealed."[1] Thus, whether ORS 138.105 permits or precludes appellate review of defendant's constitutional challenge is a question of statutory construction for which we employ "the analytical framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and modified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009)." *Brown v. GlaxoSmithKline, LLC*, 372 Or 225, 230, 548 P3d 817 (2024). Under that framework, we look to the text and context of the statute, "together with legislative history to the extent that it aids our analysis," to determine the legislature's intent. *Id.*

As pertinent here, ORS 138.105 as a whole starts by describing a broad grant of authority for the appellate court to review "the judgment or order being appealed" and then calls out certain issues for which the legislature has either expressly authorized review or expressly limited review. As pertinent here, the statute provides:

"(1) On appeal by a defendant, the appellate court has authority to review the judgment or order being appealed, subject to the provisions of this section.

"(2) The appellate court has authority to review only questions of law appearing on the record.

"* * * * *

"(7) Except as otherwise provided in subsections (8) and (9) of this section, the appellate court has authority to review any sentence to determine whether the trial court failed to comply with requirements of law in imposing or failing to impose a sentence.[2]

---

[1] Whether a defendant may appeal a criminal judgment is governed by ORS 138.035, and there is no dispute in this case that the judgment is appealable.

[2] Subsection (9) of ORS 138.105 addresses sentences resulting from a stipulated sentencing agreement and is not at issue here.

"(8)  * * *  [F]or a sentence imposed on conviction of a felony committed on or after November 1, 1989:

"(a)   The appellate court has no authority to review:

"(A)   A sentence that is within the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission.

    "* * * * *

"(c)   Notwithstanding paragraph (a) of this subsection, the appellate court has authority to review whether the sentencing court erred:

"(A)   In ranking the crime seriousness classification of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes.

"(B)   In imposing or failing to impose a minimum sentence prescribed by ORS 137.700 or 137.707."

ORS 138.105.

There is no dispute that the constitutional challenge that defendant seeks to raise on appeal meets the general requirements that ORS 138.105(2) and (7) set out for appellate review: that he has raised a "question[] of law appearing on the record" and that he is asking the appellate court to "determine whether the trial court failed to comply with requirements of law" in imposing the sentence. But the state contends, and the Court of Appeals agreed, that ORS 138.105(8) demonstrates a legislative intent to preclude the appellate court from reviewing the constitutionality of a sentence that the sentencing guidelines prescribe. The state's proposed construction of the statute rests on a two-part argument: that subparagraph (8)(a)(A) is intended to preclude constitutional review if the sentencing court followed the presumptive sentence specified by the sentencing guidelines, and that subparagraph (8)(c)(A) does not provide otherwise.

Defendant proposes a different way of understanding the text of both provisions, and he supports those interpretations by relying on the historical context of ORS 138.105—including a long-standing recognition in Oregon that so-called "vertical proportionality" challenges, the kind

of challenge that defendant raises here, are reviewable on direct appeal.[3] As we will explain, we agree with defendant's understanding of the relevant historical context, and we agree that ORS 138.105 does not demonstrate a legislative intent to preclude review of claims that the sentencing court erred by applying a provision that itself disproportionately penalizes the defendant's offense.

We start by reiterating the text of the two provisions that are at issue.

First, ORS 138.105(8)(a)(A) specifies:

"[F]or a sentence imposed on conviction of a felony committed on or after November 1, 1989:

"(a)   The appellate court has no authority to review:

"(A)   A sentence that is within the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission."

Second, ORS 138.105(8)(c)(A) specifies:

"Notwithstanding paragraph (a) of this subsection, the appellate court has authority to review whether the sentencing court erred:

"(A)   In ranking the crime seriousness classification of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes."

The Oregon Criminal Justice Commission is the administrative body that promulgates the rules known as the Oregon Sentencing Guidelines.[4] Although the legislature did not define a "presumptive sentence" in ORS chapter 138, the rules of the Oregon Criminal Justice Commission, to which the statute refers, define a "presumptive sentence" in OAR 213-003-0001(16) as meaning "the sentence provided

---

[3]  The Court of Appeals has used the term "vertical proportionality" challenge to describe a challenge under Article I, section 16, that a less severe offense has been assigned a greater penalty than the potential penalty for a more serious offense, *Simonson*, 243 Or App at 540-41, and we use that term in this opinion as well.

[4]  We have described the sentencing guidelines promulgated by the Oregon Criminal Justice Commission as "administrative rules, of which the legislature has expressed approval, although without formally adopting them as statutes." *Lane*, 357 Or at 624.

in a grid block for an offender classified in that grid block by the combined effect of the crime seriousness ranking of the current crime of conviction and the offender's criminal history or a sentence designated as a presumptive sentence by statute." The state, thus, contends that subparagraph (8)(a)(A) precludes appellate review of defendant's sentence because (as defendant concedes) his sentence of 20 months' incarceration is within the range specified by the guidelines for his offense and criminal history.

With respect to that limitation, defendant criticizes the state and the Court of Appeals for reading the provision as though the legislature had written: the appellate court has no authority to review "a presumptive sentence prescribed by [the sentencing guidelines]." Instead, he emphasizes, the provision actually applies to review of "a sentence *that is within* the presumptive sentence prescribed by [the sentencing guidelines]." (Emphasis added.) He explains that the guidelines grid blocks often specify the presumptive sentence as a range and that the trial court retains discretion to select a term of incarceration that falls within the presumptive sentence specified in a grid block. *See* OAR 213-005-0001. Thus, defendant understands the prohibition on appellate review of "a sentence *that is within* the presumptive sentence" to limit review of the decision that a sentencing court makes regarding which specific term of incarceration to select from within the range specified by a guidelines grid block. Emphasizing that ORS 138.105 generally reflects a broad grant of authority to review legal errors in sentencing, defendant argues that we should not understand subparagraph (8)(a)(A) as demonstrating a legislative intent to eliminate review for constitutional errors in sentencing simply because the court correctly followed the guidelines rules.

The state points out, however, that this court previously addressed the scope of an earlier version of the review statute and held that a "sentence that is within the presumptive sentence" made appellate review unavailable "[w]ith respect to those cases in which the trial court imposed a presumptive sentence on a conviction that was placed in the proper grid block." *State ex rel Huddleston v. Sawyer*, 324 Or 597, 607, 932 P2d 1145 (1997). Although *Huddleston* involved

a statutory challenge by the state to the court's guidelines sentence and, thus, did not address whether the provision demonstrated a legislative intent to eliminate a defendant's constitutional challenges to a sentence imposed under the guidelines, our prior interpretation of comparable text lends support to the state's interpretation of subparagraph (8)(a) (A). *See Arrowood Indemnity Co. v. Fasching*, 369 Or 214, 229-30, 503 P3d 1233 (2022) (referring to case law construing a former Oregon statute as instructive and supportive when interpreting an Oregon Evidence Code provision).

Ultimately, however, the meaning of paragraph (8) (a) does not supply a complete answer to the state's argument that the legislature has precluded review of the asserted sentencing error. As the state recognizes, regardless of the meaning of paragraph (8)(a), paragraph (8)(c) expressly authorizes review of certain sentencing challenges "[n]otwithstanding" the general limitation of review in subparagraph (8)(a)(A). We, thus, turn first to that provision and, as we will explain, conclude that it reflects the legislature's intent to preserve direct appeal as a path to review of the type of constitutional challenge that defendant raises.

Pertinent to the issue at hand, paragraph (8)(c) authorizes review of "whether the sentencing court erred *** [i]n ranking the crime seriousness classification of the current crime[.]" ORS 138.105(8)(c)(A). In context, we understand the reference to the "crime seriousness classification" to refer to the numerical category for the crime of conviction, which corresponds to a position along the guidelines' "Crime Seriousness Scale." *See* OAR 213-004-0001 (explaining that the vertical axis of the grid "is the Crime Seriousness Scale which classifies current crimes of conviction"); OAR 213-004-0002(1) (explaining that the guidelines use a "Crime Seriousness Scale" consisting of eleven "categories of crime"). The parties do not dispute the meaning of that phrase, but they disagree about what an error in "ranking" the crime seriousness classification means.

We pause briefly to clarify that this is a question of first impression. The Court of Appeals viewed opinions in which this court addressed the scope of appellate review under the prior statute as "particularly informative" regarding the

meaning of ORS 138.105(8)(c)(A), but this court has not previously considered the meaning of an error in "ranking the crime seriousness classification." *State v. Fernandez*, 334 Or App 81, 85, 555 P3d 350 (2024). In two prior cases, this court addressed the scope of appellate review of sentencing decisions under *former* ORS 138.222, *repealed by* Or Laws 2017, ch 529, § 26, which similarly included a provision authorizing review of an error in "ranking the crime seriousness classification of the current crime." [5] *Huddleston*, 324 Or at 607; *State v. Adams*, 315 Or 359, 365-67, 847 P2d 397 (1993). But those cases did not purport to interpret the meaning of the phrase; instead, they construed a different aspect of the statute as making an entire subsection, which included the "error in ranking" provision, applicable only to a narrow category of sentencing errors. *See id.* (emphasizing that *former* ORS 138.222(2) listed five categories of sentencing decisions that are not reviewable and that a catch-all for "other issue[s] related to sentencing" contained the only express cross-reference to *former* ORS 138.222(4)—which included the "error in ranking" provision). As we will explain when we turn to the history of ORS 138.105, the 2017 legislature eliminated the structure and phrasing on which *Huddleston* and *Adams* relied and made explicit that the appellate court has authority to review the errors described in ORS 138.105(8) (c) "[n]otwithstanding" the general limits on review of guidelines sentences. Therefore, our decisions in *Huddleston* and *Adams* do not resolve the meaning of an error in "ranking" the crime seriousness classification.

The term "ranking" is not defined in the statutes or the sentencing guidelines. Defendant points to the plain meaning of the terms to support his understanding that an error in "ranking the crime seriousness classification of the current crime" can include a trial court's error in selecting a ranking for the current crime that is disproportionate to the offense in violation of Article I, section 16. Absent an

---

[5] This opinion discusses cases addressing various versions of *former* ORS 138.222. Despite the fact that the statute was amended many times over the years, the wording in the statute material to this opinion remained unchanged from the time that *former* ORS 138.222 was enacted in 1989. *See* Or Laws 1989, ch 790, § 21; Or Laws 1993, ch 692, § 2; Or Laws 1993, ch 698, § 1; Or Laws 1997, ch 852, § 9; Or Laws 2001, ch 644, § 3; Or Laws 2003, ch 737, § 102; Or Laws 2005, ch 563, § 1. Thus, for ease of reference, we will refer generically to *former* ORS 138.222 throughout this opinion.

indication that the legislature intended a different meaning for the term "ranking," we agree with defendant that the ordinary meaning of the text should inform our understanding of the legislature's intent. *See State v. Hubbell*, 371 Or 340, 349, 537 P3d 503 (2023) (observing that, when the legislature has not defined a particular word or phrase that includes terms of ordinary usage, we generally "presume that the legislature intended those terms to be understood in their ordinary sense"). The ordinary usage of the term "ranking" (and its variations) suggests a placement in relation to others. *See Webster's Third New Int'l Dictionary* 1881 (unabridged ed 2002) (defining "rank" as "a position or order in relation to others in a group" and "the order according to some statistical characteristic," and when used as a verb: "to determine the relative position or merit of : CLASSIFY, IDENTIFY, RATE"); *see also id.* at 417 (defining "classify" as "to group or segregate in classes that have systematic relations usu[ally] founded on common properties or characters : SORT," "to put into a class, classification, or category : RATE").[6]

Giving the terms of ORS 138.105(8)(c)(A) their ordinary meaning suggests that an error in "ranking the crime seriousness classification" refers to an error in the court's selection of the position along the crime seriousness scale that it uses to calculate the presumptive sentence. Nothing in the text specifies that the reason for the error affects whether the error is reviewable. Thus, nothing in the text of subparagraph (8)(c)(A) precludes defendant's interpretation that the review authorized by subparagraph (8)(c)(A) includes review of whether the ruling is erroneous because the constitution requires the court to use a different crime seriousness category.

According to the state, however, the term "ranking," in reference to crime seriousness, is used throughout the commission's rules in a way that refers only to what a court does when determining the applicable crime seriousness category under the guidelines, not to what the commission has

---

[6] We have explained that one reason this court frequently consults *Webster's Third New Int'l Dictionary* "is that, unlike other dictionaries, which set out to prescribe the correct usage for words, *Webster's* is a dictionary with a descriptive focus, reporting ordinary usage." *Brown*, 372 Or at 232 n 3 (internal quotation marks omitted).

done in assigning an offense to a crime seriousness category. Thus, the state argues, by using the same term in subparagraph (8)(c)(A), the legislature demonstrated that the provision is intended to authorize review only if a party claims that the sentencing court failed to follow the guidelines when determining the crime seriousness category to use in calculating the defendant's presumptive sentence. *See State v. Kragt*, 368 Or 577, 588, 495 P3d 1233 (2021) (considering administrative rules forming the sentencing guidelines as context for the meaning of a later statute concerning those guidelines). Subparagraph (8)(c)(A), the state therefore contends, should be understood as only authorizing review of claims that the sentencing court failed to follow the guidelines when determining the crime seriousness category to use for the crime of conviction. The Court of Appeals agreed with that interpretation. *Fernandez*, 334 Or App at 84.

We are not persuaded. Although the state is correct that the term "ranking" and its variations are used repeatedly in the administrative rules, those usages do not reflect the clear distinction that the state proposes. Rather, although some rules may be understood as using "ranking" to refer to what the sentencing judge does in applying the framework of categories set by the guidelines, other rules use the term "ranking" in ways that capture what the commission has done in specifying the crime seriousness category for a particular offense. For example, OAR 213-004-0003 provides that the offenses of aggravated murder and first- and second-degree murder are "not ranked in the Crime Seriousness Scale," and OAR 213-004-0004 refers to offenses that are "omitted from the Crime Seriousness Scale" as "Unranked Offenses." And sometimes the same rule uses the term in both ways. *See* OAR 213-004-0005(6) (specifying that a conviction for attempt to commit "an offense ranked on the Crime Seriousness Scale at crime category 1 or 2 shall be ranked at crime category 1"). Thus, we agree with defendant that the text of ORS 138.105 (8)(c)(A) is susceptible to an interpretation that supports his understanding that the legislature intended to authorize review of a claim that the sentencing court erred because the constitution requires the court to use a different crime seriousness ranking to calculate the defendant's sentence.

Defendant ultimately relies on the historical context and legislative history of ORS 138.105 as the clearest indication of what the legislature intended when adopting that statute. *See State v. Eggers*, 372 Or 789, 799-800, 558 P3d 830 (2024) (explaining that the context of a statute can include previously enacted versions of the same statute, or other related statutes, and case law that shows "how an area of legislation developed over the years" (internal quotation marks omitted)). Defendant explains that, long before adoption of the sentencing guidelines, Oregon case law made it clear that direct appeal was a path for defendants to obtain review and reversal of sentences on the ground that a statutorily authorized sentence was unconstitutionally disproportionate. *See, e.g.*, *Cannon v. Gladden*, 203 Or 629, 632-33, 281 P2d 233 (1955) (holding that statute authorizing life imprisonment for the lesser included offense of assault with intent to commit rape violated Article I, section 16, because that sentence exceeded the 20-year maximum for the greater offense of rape); *State v. Shumway*, 291 Or 153, 164, 630 P2d 796 (1981) (holding that statutory sentencing scheme violated Article I, section 16, by permitting a lesser minimum sentence for defendants convicted of a more aggravated form of the same conduct). And defendant maintains that the legislature did not intend to withdraw that authority for sentences subject to the guidelines.

We agree that the relevant history of ORS 138.105 favors defendant's understanding that the legislature intended to preserve direct appeal as a path for defendants to obtain review and reversal of guidelines sentences on the ground that a statutorily authorized sentence was unconstitutionally disproportionate. The limits at issue here date to 1989, when, in conjunction with the adoption of the sentencing guidelines, the legislature adopted a new statute to specifically address review of guidelines sentences. Or Laws 1989, ch 790; Or Laws 1989, ch 790, § 21. Although the structure of that 1989 statute differs from ORS 138.105, it included provisions that were the predecessors to the provisions of ORS 138.105(8) that are at issue in the present case. Similar to the present statute, the 1989 statute included a general limitation:

"On appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989, the appellate court shall not review:

"(a)  Any sentence that is within the presumptive sentence prescribed by the rules of the State Sentencing Guidelines Board."

*Former* ORS 138.222(2)(a). Also similar to the present statute, the 1989 statute specified what was reviewable:

"In any appeal, the appellate court may review a claim that:

"(a)  The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence; or

"(b)  The sentencing court erred in ranking the crime seriousness classification of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes."

*Former* ORS 138.222(4).

The legislation that became ORS 138.105 was enacted as part of Senate Bill (SB) 896 (2017). Or Laws 2017, ch 529, § 13. The bill was drafted by the Direct Criminal Appeals Work Group, sponsored by the Oregon Law Commission, in response to a request from the Appellate Commissioner for the Oregon Court of Appeals to overhaul the statutes governing the procedural laws of appealability and reviewability in criminal cases. Exhibit 37, Senate Committee on Judiciary, SB 896, Apr 6, 2017 (Report of the Direct Criminal Appeals Work Group on SB 896 (2017), Oregon Law Commission) (Work Group Report); Video Recording, Senate Committee on Judiciary, SB 896, Apr 6, 2017, at 1:36:22 (testimony of Oregon Appellate Commissioner James Nass), https://olis.oregonlegislature. gov (accessed Apr 15, 2026). The legislative committees that considered the bill received a report from the Direct Criminal Appeals Work Group, which explained that the group's goal had been to reorganize, streamline, and clarify existing statutory provisions and that the bill "propos[ed] to codify some case law, to modernize some older statutory provisions, and to make a few substantive changes to the

law." Work Group Report at 2. It also explained that "[c]ases interpreting retained provisions remain significant." *Id*.

The Work Group Report specifically explained that the limits on review now set forth in ORS 138.105(8) were intended to restate existing limits on reviewability:

"Subsection (8)(a) is intended to restate the limits on reviewability of sentences imposed on convictions for felonies committed after November 1, 1989 (that is, convictions subject to the Oregon Criminal Justice Commissioner's Sentencing Guidelines) currently set forth in ORS 138.222(2)(a) through (c). *** Subsection (8)(c) is intended to restate the limitations on review currently set forth in ORS 138.222(4)(b) and (c)."

Work Group Report at 21 (referring to *former* ORS 138.222(2) and (4)).

Given that the 2017 legislature intended to restate the limitations on review previously set out in 1989, the intent of the 1989 legislature significantly informs our understanding of the current statute. The appellate review provisions that became *former* ORS 138.222 were included in the same bill through which the legislature adopted the sentencing guidelines. House Bill (HB) 2250 (1989). There appears to be no record that the 1989 legislature discussed whether it intended to eliminate direct appellate review of challenges to the constitutionality of sentences imposed under the guidelines. It often is difficult to infer any particular legislative intent from silence, but three factors here suggest that the reason the 1989 legislature did not discuss eliminating review of the kind of constitutional challenge defendant raises here is that it did not intend to do so.

First, the new provision governing review of guidelines sentences provided that, "[i]n any appeal, the appellate court may review a claim that: *** [t]he sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence." *Former* ORS 138.222(4). Second, we presume that the legislature was aware of the line of sentencing cases described above, which make it clear that statutory sentences were subject to review for adherence to the proportionality requirement of Article I, section 16, and also that direct appeal had long been a path in Oregon for

obtaining that review. 375 Or at 217 (describing *Cannon*, 203 Or at 632-33, and *Shumway*, 291 Or at 164); *see Eggers*, 372 Or at 800 (explaining that we assume the legislature is aware of relevant decisions published at the time of a statute's enactment). Third, to the extent that the 1989 legislature addressed constitutionality of sentences at all, it was in the context of a different 1989 bill that amended and added to the statutory provisions that otherwise governed appeal and review in criminal cases. HB 2470 (1989); Or Laws 1989, ch 849. As amended, *former* ORS 138.040 (1989), *repealed by* Or Laws 2017, ch 529, § 26, provided that "[t]he appellate court may review" whether any appealable disposition was "unconstitutionally cruel and unusual," and *former* ORS 138.050 (1989), *repealed by* Or Laws 2017, ch 529, § 26, as amended provided that, in an appeal following a guilty plea, "the appellate court shall only consider whether the disposition" was "unconstitutionally cruel and unusual." In that context, had the 1989 legislature intended to eliminate constitutional review for sentences subject to the guidelines, that would have been a significant departure, and the lack of any mention in the legislative history that the new review provision would create such a departure suggests that the legislature did not intend to do so.

Of course, the intent of the 2017 legislature also is significant to our understanding of the scope of review for guidelines sentences, because, although the 2017 legislature retained and incorporated key text from the 1989 law, it did so by creating an entirely new statute as part of a comprehensive overhaul "to codify some case law, to modernize some older statutory provisions, and to make a few substantive changes to the law" governing appeal and review in criminal cases. Work Group Report at 2. In adopting that new statute, the legislature made at least two changes to review procedures that suggest it was generally interested in expanding the scope of review.

First, the legislature made changes that expanded review for an "error in ranking" beyond an existing limit that this court had imposed under *former* ORS 138.222. As indicated above, this court in *Huddleston* and *Adams* had construed the former guidelines review statute to mean that the

entirety of *former* ORS 138.222(4), which included the authorization to review an "error in ranking," was mostly inapplicable to review of a guidelines sentence. 375 Or at 214. That conclusion was largely the product of a distinction that has been eliminated from the 2017 statute—the fact that *former* ORS 138.222(2) had listed five limitations on review of a guidelines sentence and only the fifth, a catch-all providing that the court does not review "other issue[s] related to sentencing," expressly cross-referenced *former* ORS 138.222(4). *Huddleston*, 324 Or at 607 (explaining *Adams*, 315 Or at 365-67). In adopting ORS 138.105, as the table below illustrates, the legislature eliminated the "other issue[s]" provision that was our focus in *Adams* and modified the "error in ranking" provision to clearly express that the court's authority to review an error in "ranking" applies "[n]otwithstanding" the general limitations on reviewing guidelines sentences:

| *former* ORS 138.222 (1989) | ORS 138.105 (2017) |
|---|---|
| "(2)  On appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989, the appellate court shall not review:<br><br>"(a)  Any sentence that is within the presumptive sentence prescribed by the rules of the State Sentencing Guidelines Board.<br><br>"(b)  A sentence of probation when the rules of the State Sentencing Guidelines Board prescribe a presumptive sentence of imprisonment but allow a sentence of probation without departure.<br><br>"(c)  A sentence of imprisonment when the rules of the State Sentencing Guidelines Board prescribe a presumptive sentence of imprisonment but allow a sentence of probation without departure. | "(8)  * * * [F]or a sentence imposed on conviction of a felony committed on or after November 1, 1989:<br><br>"(a)  The appellate court has no authority to review:<br><br>"(A)  A sentence that is within the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission.<br><br>"(B)  A sentence of probation when the rules of the Oregon Criminal Justice Commission prescribe a presumptive sentence of imprisonment but allow a sentence of probation without departure.<br><br>"(C)  A sentence of imprisonment when the rules of the Oregon Criminal Justice Commission prescribe a presumptive sentence of imprisonment but allow a sentence of probation without departure. |

" * * * * *

"(e) Except as authorized in subsections (3) and (4) of this section, any other issue related to sentencing.

"* * * * *

"(4) In any appeal, the appellate court may review a claim that:

"(a) The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence; or

"(b) The sentencing court erred in ranking the crime seriousness classification of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes."

" * * * * *

"(c) Notwithstanding paragraph (a) of this subsection, the appellate court has authority to review whether the sentencing court erred:

"(A) In ranking the crime seriousness classification of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes."

Second, in adopting ORS 138.105, the legislature combined review of a defendant's challenges to both guidelines and other sentences in the same statute, and in doing so made misdemeanor sentences subject to review—previously applicable only to guidelines sentences—"to determine whether the trial court failed to comply with requirements of law in imposing or failing to impose a sentence." ORS 138.105(7). The commission described that provision as "one of the more significant changes made by this bill," because, under the existing law, "an appellate court may review the disposition of a misdemeanor (or pre-November 1989 felony) conviction only as to whether the disposition exceeds the maximum allowable by law or is unconstitutionally cruel and unusual." Work Group Report at 21. The report explained that the new provision would expand the scope of review for those offenses because it "would do away with those limits." *Id*.

Although that discussion was addressed to expanding the scope of review for misdemeanor sentences, it appears that the legislature would have understood the net effect of the

reorganization to be an increase in the opportunity to obtain review of misdemeanor sentences without any decrease in the opportunity to obtain review of felony guidelines sentences. Significantly, with respect to the expanded scope of review of misdemeanors and older felonies, the report notes that, "[u]nder current law, that is the scope of review applicable to both defendants' and the State's appeals from judgments of conviction of a felony committed after November 1, 1989," citing to *former* ORS 138.222(4)(a). Work Group Report at 21 n 20. A similar point was made to the legislature in testimony by the legislative director for the Attorney General about the bill's fiscal impact. *See* Video Recording, Joint Committee on Ways and Means Subcommittee on Public Safety, SB 896, June 5, 2017, at 28:09 (testimony of Aaron Knott explaining that the bill would expand review of misdemeanors to align with the existing scope of review for felonies), https://olis.oregonlegislature.gov (accessed Apr 16, 2026).

In other words, the Work Group Report advised the legislature that ORS 138.105(8)(a) and (c) restated the reviewability limits of guidelines sentences under existing law and also that existing law permitted review for whether the trial court failed to comply with requirements of law. Court of Appeals cases decided under existing law would also have illustrated for the legislature that, under the existing law, following the 1989 legislature's adoption of *former* ORS 138.222, the court continued to understand that it retained authority to review the kind of constitutional disproportionality challenge that defendant raises here—challenges that the guidelines assigned a crime seriousness score to the defendant's offense that caused the defendant's presumptive sentence to be disproportionately severe compared to lower scores for more serious offenses.

For example, in *Simonson*, a case decided in 2011, the defendant argued that the trial court had erred in using a crime seriousness score of category 7 to determine the presumptive sentence for each of his five convictions for second-degree sexual abuse, because—although the guidelines assigned that score to the offense—the score was disproportionate and "ma[de] the sentence grid block assigned for defendant's offenses impermissible." 243 Or App at 537, 539-41. The Court of Appeals agreed, reasoning that

second-degree sexual abuse carried a crime seriousness score of 7, yet if the defendant had been convicted of the "more serious crime of third-degree rape"—the same type of sexual intercourse but with younger victims (aged 14 or 15)—the offenses would have carried a crime seriousness score of category 6, and the "defendant's presumptive sentences for them would have been less severe." *Id.* at 539, 541. The Court of Appeals described that discrepancy as a "text-book example" of the application of the "principle of vertical proportionality" and, thus, held that the sentence for defendant's offenses violated Article I, section 16. *Id.* at 541-42.

In two other cases, the Court of Appeals not only had reviewed Article I, section 16, proportionality challenges identical to that in *Simonson* but had reversed those cases for resentencing despite a lack of preservation, because the court viewed the use of a guidelines crime seriousness score that was unconstitutionally disproportionate as plain error. *State v. Decamp*, 252 Or App 177, 179, 285 P3d 1130 (2012), *rev den*, 353 Or 787 (2013) (exercising discretion to correct the error as "the state has no interest in sustaining a constitutionally infirm sentence"); *State v. Burge*, 252 Or App 574, 575-76, 288 P3d 565 (2012), *rev den*, 353 Or 787 (2013) (same). According to defendant, the scope of sentencing review demonstrated by those Court of Appeals cases should inform our understanding of what the legislature intended when adopting ORS 138.105, because the legislature "would have known that the Court of Appeals had recently reviewed a sentencing guidelines sentence for proportionality." *See State v. Cortes*, 374 Or 461, 481, 580 P3d 839 (2025) ("When we look for the legislative intent behind a word choice in a statute, we presume that the legislature was aware of the existing law and the legal definitions and common understanding of terms used within the statute.").

The state correctly points out that the cases on which defendant relies did not expressly address the meaning of *former* ORS 138.222.[7] But the three opinions clearly

---

[7] The state acknowledges that the defendants in the cited cases had received presumptive sentences pursuant to the felony sentencing guidelines, but it dismisses the significance of the cases, because they did not "expressly state that the sentences at issue were the prescribed *presumptive* sentences for the defendant's convictions." (Emphasis in original.)

imply that each defendant received a presumptive sentence and clearly address the type of constitutional challenge to the guidelines' crime seriousness score that defendant raises here. And the one appellate case that expressly engages with the scope of review of a guidelines sentence under *former* ORS 138.222(4)(a) articulates the same understanding of the court's review authority that *Simonson* and the other cases illustrate. *State v. Cook*, 108 Or App 576, 580, 816 P2d 697 (1991), *rev den*, 312 Or 588 (1992). In that consolidated case, four defendants each had appealed from a sentence that they conceded was within the presumptive range of the sentencing guidelines. *Id.* at 579. Although rejecting the argument of some of the defendants that *former* ORS 138.222(4)(a) permitted review of their fact-specific challenges to presumptive sentences, the court emphasized that "[w]hat *is* permitted by the exception in ORS 138.222(4)(a) is review of a claim that the presumptive sentence rests on a legal error." *Id*. at 580 (emphasis in original). The court also emphasized that none of the defendants in the consolidated appeal had challenged the "constitutionality of the grid blocks" or argued that "the guidelines themselves present cruel and unusual punishment questions." *Id.* at 580, 582.

Defendant acknowledges that there is no indication that any of the Court of Appeals cases were specifically mentioned in the legislative history, but he emphasizes that the Work Group Report explained to the legislature that "[c]ases interpreting retained provisions remain significant." Work Group Report at 2. Moreover, both the report and testimony told the legislature that existing scope of review for felony guidelines sentences was a broader scope than the "unconstitutionally cruel and unusual" review previously applicable to misdemeanors. *Id*. at 21; Video Recording, Joint Committee on Ways and Means Subcommittee on Public Safety, SB 896, June 5, 2017, at 28:09 (testimony of Aaron Knott), https://olis.oregonlegislature.gov (accessed Apr 16, 2026). Given that legislative record, we agree with defendant that Court of Appeals cases illustrating the existing scope of review for felony guidelines sentences inform our understanding of what the legislature intended in 2017 when it retained the key provisions addressing the appellate court's authority to review those sentences. *See Lindell*

*v. Kalugin*, 353 Or 338, 349, 297 P3d 1266 (2013) (explaining that "[c]ase law existing at the time of the adoption" of a statute "forms a part of the context"). Under existing law, the Court of Appeals was reviewing and reversing sentences because of a guidelines crime seriousness score that was unconstitutionally disproportionate, and we are persuaded that the legislature intended to preserve that scope of appellate review.

## CONCLUSION

In ORS 138.105(8)(c)(A), the legislature has explicitly permitted appellate review of an error in "ranking the crime seriousness classification of the current crime." Considering the legislative history and the entire historical context in which the 1989 and 2017 legislatures addressed the scope of review of sentences subject to the sentencing guidelines, we are persuaded that the statute reflects the legislature's intent to preserve direct appeal as a path to review of the type of Article I, section 16, challenge that defendant seeks to raise.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.